**James L. LOPATA**

v.

**BEMIS COMPANY, INC.**

**Civ. A. No. 72–1718.**

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1975.

Edward C. Toole, Jr., Philadelphia, Pa., for plaintiff.

Roger B. Wood, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This diversity action is before this Court on remand from the Court of Appeals to consider a difficult conflict of laws question which has been raised in the wake of *Knapp v. North American Rockwell Corp.*, 506 F.2d 361 (3d Cir. 1974) *cert. denied*, 421 U.S. 965, 95 S.Ct.

1955, 44 L.Ed.2d 452 (1975). Plaintiff's claim stems from personal injuries he sustained in an accident which occurred at his employer's New Jersey plant on February 22, 1971. The liability of defendant, Bemis Company, Inc. (Bemis), is premised on the theory that defendant, as successor in interest to the manufacturer of the machine which allegedly caused the accident, is liable for the tortious conduct of its predecessor, Rock Wool Engineering and Equipment Company (Rock Wool).

Since this Court's jurisdiction is premised on diversity of citizenship, we must apply the choice of law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Electrical Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, we look to *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) to determine which jurisdiction's law applies. In *Griffith*, the Pennsylvania Supreme Court held that a court must scrutinize the various contacts each state has with the matter in controversy to ascertain which state has the greatest interest in the issue. The law of the state most interested in the litigation should be applied to resolve a dispute. As stated in *Suchomajcz v. Hummel Chemical Company*, 524 F.2d 19 (3d Cir. 1975):

> " * * * [W]e should apply the law of the predominantly concerned jurisdiction, measuring the depth and breadth of that concern by the relevant contacts each affected jurisdiction had with the specific transaction. The contacts are relevant only if they relate to the 'policies and interests underlying the particular issue before the court.'" *Id.*, at 23.

The factual complex of this case touches at least three states—Indiana, New Jersey and Pennsylvania. The predecessor corporation, Rock Wool, an Indiana corporation, manufactured the machine in question at its plant in Wabash, Indiana. The "Agreement for the Purchase of Certain Assets" by which Rock Wool sold the majority of its assets

to Bemis, a Missouri corporation, was executed in Indiana and covered assets and property located in Wabash. The agreement provided that it was to be construed in accord with the law of Indiana.

Pennsylvania also has "contacts" with this case. Plaintiff had been a domiciliary of Pennsylvania almost his entire life, moved to New Jersey where he was injured, and at the time of the filing of the complaint again lived in Pennsylvania with his parents. Bemis is registered to do business in Pennsylvania and has apparently placed its goods into the national stream of commerce which includes Pennsylvania. Plaintiff was treated for his injuries by several doctors both in Pennsylvania and in New Jersey.

New Jersey's other contacts with this case include the following: the accident occurred there, and plaintiff resided there at the time of the accident. Moreover, plaintiff's New Jersey employer paid him workmen's compensation benefits after the accident.[1] Finally, the machine in question had been sold to and was being utilized by a New Jersey employer at the time the injuries were suffered.

In analyzing the relative weight to be accorded these various "contacts" with the aim of determining which of these three states has the greatest interest, *Griffith* suggests several pertinent threshold inquiries. Among these inquiries are: the issue involved, the nature of the alleged tort, and the purposes of the tort rule involved. Basically, the issue with which we are confronted involves the tort liability of a successor corporation to a party injured by alleged defects in a machine which had been designed, manufactured and sold prior to the transfer of assets and subsequent to the dissolution of the predecessor corporation. The alleged tortious conduct from which this issue springs involves a blend of both strict liability and negligence[2]

theories which necessarily focus on the characteristics of the machine itself and the factual context in which the injury occurred. The purpose of these underlying tort rules is to spread the risks of loss equitably, taking from the shoulders of the injured party the burden of the expenses of his injuries and distributing these risks to those parties who are deemed better able to bear the risks. *See e. g. Knapp, supra.* Moreover, the more precise question involved here, the nature of tort liability of a successor corporation, requires a balancing of the competing policies, designed, on the one hand, to protect the corporate successor from the claims occasioned by conduct of its predecessor and, on the other hand, to shift the risk of loss from the injured party to those entities better able to bear the losses.

Plaintiff argues that Pennsylvania has the greatest interest in this litigation, and as such, the applicable Pennsylvania law as set forth in *Knapp, supra,* controls the disposition of this case. Defendant, understandably, vigorously contends there is no liability under the law of Indiana, the state it contends has the greatest interest in this litigation. Alternatively, both parties argue that New Jersey law applies, but they reach opposite conclusions in applying the substantive law of New Jersey on the question of a corporate successor's tort liability.

▮ After carefully considering these contentions, we conclude that New Jersey has the greatest interest in this litigation, the underlying issues and the parties. Our reasons for reaching this conclusion are based primarily upon the quality of the contacts touching New Jersey and our assessment of the importance of the state policies which underly a resolution of the tort issue.

First, New Jersey is the place where the injury occurred. By itself, the locale of the injury is not particularly signifi-

---

1. See plaintiff's deposition, pp. 23–30. Presumably, in the event of a recovery by plaintiff, the issues of insurance coverage and subrogation may become pertinent.

2. See plaintiff's complaint, ¶¶ 6, 7 and 8, for the allegations of tortious conduct.

cant, but when viewed in the light of the many different interests which are implicated by the concomitant fact of the employment relationship involved in this case, this "contact" becomes vitally important. This additional fact serves to create a matrix which involves the immediate parties to this action as well as the employer who paid workmen's compensation (see deposition of plaintiff, pp. 23–30), the State of New Jersey with its interest in the allocation of risk in the employment relationship, and the insurance carrier which paid the compensation benefits.[2a] Moreover, interwoven into this matrix is an additional consideration which underlies the ultimate resolution of the tort issue—the accountability of corporate suppliers of allegedly defective machines which cause injuries and disruption in employment.

Second, at the time of the injury, February 22, 1971, plaintiff had in fact been living in New Jersey, subject of course to the rights and obligations which that state places on its residents. Such rights include those which are based on the correlative duties which the state imposes on corporations which avail themselves of the opportunity to engage in commerce there. The predecessor corporation, Rock Wool, sold the machine in question to the plaintiff's New Jersey employer, and necessarily subjected itself to the applicable laws of New Jersey regulating the allocation of risks from injury caused thereby. The tort liability of a successor corporation, Bemis, bears a logical relationship to these considerations. The fact that plaintiff had resided in Pennsylvania all his life except for the three months prior to the accident and thereafter returned to Pennsylvania does not serve to tip the balance in favor of Pennsylvania in light of the quality and import of the other contacts with New Jersey.

Third, on balance, neither the interests of Indiana nor of Pennsylvania, when closely analyzed, rise to the level of interest which New Jersey has in this litigation. The fact that the machine was manufactured in Indiana by an Indiana corporation which ultimately sold its assets to the defendant under an agreement to be construed under Indiana law does not change the significance of the fact that the machine was destined for use in and caused injury in New Jersey. We are here concerned with the issue of tort liability as to third persons who were not parties to the agreement transferring assets between corporations, an issue which requires us to focus on much more than the contractual niceties of the corporate arrangement *inter se*. Similarly, the possibility that plaintiff *may* become a "public charge" to the taxpayers of Pennsylvania is not by itself a contract of sufficient quality to call into play the application of Pennsylvania laws on this issue. *See Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970); *Cavallaro v. Williams*, 530 F.2d 473 (3d Cir. C.A. No. 75–1348, Slip op. December 8, 1975); *Zurzola v. General Motors Corporation*, 503 F.2d 403 (3d Cir. 1974). *See also Suchomajcz v. Hummel Chemical Company, supra*; *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966). Accordingly, we have concluded that we must apply the law of New Jersey in this case.[3]

This brings us to the second issue in this case, whether, under New Jersey law, defendant Bemis is entitled to summary judgment on the question of its alleged liability in tort as successor to Rock Wool, the corporation which manufactured the allegedly defective machine.

**2a.** Cf. *Knapp, supra*, 506 F.2d 361, 368, Fn. 28.

**3.** All three states, Indiana, New Jersey and Pennsylvania, have expressed their concern with the protection of their residents from the losses occasioned by tortious conduct. Accordingly, this concern may not be the sole basis for resolving the conflicts issue. *See e.*

g. *Molitor v. Kaneland, Community Unit Dist. No. 302*, 18 Ill.2d 11, 163 N.E.2d 89 (1959); *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973); *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28 (3d Cir. 1975) (reference to New Jersey "policy favoring liberal products liability recovery".); *Knapp v. North American Rockwell Corp., supra.*

On a motion for summary judgment, Rule 56(c), F.R.Civ.P., limits our inquiry to whether or not there is a genuinè issue as to any material fact. *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.) *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). We are persuaded: (1) that there is no substantial factual dispute on the record which consists, *inter alia*, of defendant's affidavits, the transfer agreement, interrogatories and depositions; and (2) that defendant is entitled to judgment as a matter of law.

The facts can be summarized as follows: Pursuant to an agreement executed on March 31, 1966, in exchange for cash Rock Wool transferred the bulk of its assets to defendant Bemis.[4] Thereafter, Bemis continued to manufacture machines similar to the one which plaintiff asserts was defective and supplied former Rock Wool customers with spare parts. Subsequently, in accordance with the agreement, Rock Wool changed its corporate name to Overman & Shovlin and eventually dissolved in late April, 1967, under the applicable provisions of Indiana law. Two employees of Rock Wool, Robert Stoudt and Thomas Shovlin accepted defendant's employment offers. Shovlin, a former Rock Wool director and vice president, became a product manager and Stout was employed as a foreman. Plaintiff's injuries subsequently occurred on February 21, 1971.

Defendant argues that this transfer of assets was simply a sale and nothing more, while plaintiff contends that Bemis must answer for the alleged tortious conduct of Rock Wool because: (1) under the transfer agreement, defendant Bemis impliedly assumed liability for injuries such as the one in question[5]; (2) defendant Bemis was a mere continuation of the selling corporation and, therefore, must take responsibility for the injuries caused by its product; and (3) the transaction in question constituted a *de facto* merger.

In turning to the principles of New Jersey law which we conclude must. be applied, we find that the rule governing the tort liability of a successor corporation is set forth in *McKee v. Harris-Seybold Co.*, 109 N.J.Super. 555, 264 A.2d 98 (L.Div.1970); *aff'd per curiam*, 118 N.J. Super. 480, 288 A.2d 585 (App.Div.1972)[6] as follows:

"It is the general rule that where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape liability for such debts. *Jackson v. Diamond T. Trucking Co.*, 100 N.J.Super. 186, 241 A.2d 471 (Law Div.1968); *Andres v. Morgan*, 62 Ohio St. 236, 56 N.E. 875 (Sup.Ct.1900); *Ruedy v. Toledo Factories Co.*, 61 Ohio App. 21, 22 N.E.2d 293 (App.Ct.1939); *Kloberdanz*

---

4. Paragraph 2 of the "Agreement for the Purchase of Certain Assets of Rock Wool Engineering and Equipment Company, Inc. by Bemis Company, Inc." [agreement] listed these assets, which included all inventory and work in progress; accounts receivable; engineering, shop, office, demonstration and test machinery and equipment (excluding vehicles); and patents, patent applications, inventions, discoveries, designs, shop rights, processes, formulae, patent licenses, trademarks and "Account with Indiana Employment Security Division". Approximately 475 different pieces of furniture, office and shop equipment, machinery and tools, listed on Exhibit A to the agreement, were included.

5. Plaintiff has not pressed this argument in his briefs subsequent to the remand from the Court of Appeals. Had it been reasserted, we would be compelled to reject it on the basis of the clear terms of paragraph 7 of the Agreement.

6. *Cf. Knapp, supra*, 506 F.2d 361, 364, where the Court of Appeals noted the absence of a controlling Pennsylvania precedent and applied the rule which it·predicted the Pennsylvania Supreme Court would apply.

*v. Joy Mfg. Co.*, 288 F.Supp. 817 (D.Colo.1968); 19 Am.Jur.2d, § 1546, at 922. A fifth exception, sometimes incorporated as an element of one of the above exceptions, is the absence of adequate consideration for the sale or transfer. 19 Am.Jur.2d § 1551, at 927; 7 Fletcher, Cyclopedia of Corporations, § 4751 (1919 ed.)."

*Id.*, 264 A.2d 101, 102.

In *McKee* the plaintiff was injured by an allegedly defective paper cutter manufactured by Seybold Machine Co. in 1916. Pursuant to a 1926 agreement, Seybold sold all of its assets to the Harris Automatic Press Co. in exchange for cash, some common stock of Harris, and an assumption of certain of Seybold's liabilities. Seybold agreed to change its name, covenanted not to engage in any manufacturing activities and conveyed to Harris its good will as well as the rights to the exclusive use of the name "Seybold-Machine Co." Seybold, having later changed its name to Washington Machine Company, ultimately dissolved. Thereafter, Harris assigned its interest in the contract to a new corporation formed for that purpose called Harris-Seybold Co.

The New Jersey court, in rejecting arguments which are nearly identical to those proffered by plaintiff here, held that the successor corporation, Harris-Seybold Co., was not liable for the alleged tortious conduct of its predecessor. Noting that the transfer of assets was primarily for cash, the court stated:

"[T]he identity of the [Seybold] corporation and of its shareholders as an integral part of the corporate identity was not eradicated by the transfer."

*Id.*, at 104.

The court concluded that "[I]f the vendor corporation receives the consideration for the transfer, as opposed to those situations where the stockholders directly receive the same, and that corporation is thereby kept alive, there seems to be nothing in the nature of a merger or consolidation." *Id.*, at 104. The court rejected the contention that a *de facto* merger had occurred, distinguishing an earlier case, *Applestein v. United Board & Carton Corp.*, 60 N.J.Super. 333, 159 A.2d 146 (Ch.Div.1960), *aff'd* 33 N.J. 72, 161 A.2d 474 (1960), which had established the doctrine in New Jersey.

The court similarly found that Harris-Seybold Co. was not a continuation of the selling corporation, stating:

"In the instant case there was presumably a continuity of actual manufacturing operations. The lands, buildings, machinery and trade names were sold, and it is apparent that the purchaser intended to make use of all these in the manufacture of the same type of product. It was also stipulated in the contract of sale that the purchaser would employ the vice-president, secretary and treasurer of Seybold at the respective individual's request. The length of required employment was one year. However, this provision was merely to insure the economic stability of those officers immediately after the transfer. The contract did not state the capacity in which they were to be employed. In short, there is no evidence of continuity of management. As stated previously, there was also no continuity of stockholder investment, and the selling corporation retained its separate identity well after the sale took place. Neither were there common directors or officers at the time of the sale. When one company purchases all the assets of another, it is to be expected that the purchasing corporation will continue the operations of the former, but this does not by itself render the purchaser liable for the obligations of the former. For liability to attach, the purchasing corporation must represent merely a 'new hat' for the seller. *Bergman & Lefkow Insurance Ag. v. Flash Cab Co.*, 110 Ill.App.2d 415, 24 N.E.2d 729 (App.Ct.1969). The purchaser-movant was not such a continuation of Seybold as to render it liable for the latter's torts."

The facts in the case *sub judice* are virtually indistinguishable from

those in *McKee.* We thus conclude, on the basis of the result in *McKee*, that the plaintiff's assertions must be rejected and that the general rule of non-liability applies in this case.

Plaintiff, however, argues in addition that *Shannon v. Samuel Langston Company*, 379 F.Supp. 797 (W.D.Mich.1974), decided under the law of New Jersey as set forth in *McKee*, controls the disposition of this case. In *Shannon,* the court held that a *de facto* merger had occurred where the consideration for the assets of the transferor corporation was common stock of the transferee corporation, all of the predecessor's employees became employees of the successor, the operating management remained substantially the same, the corporate headquarters did not change and both the organization and operation were basically the same before and after the transfer of assets.

However, we conclude that *Shannon* is factually distinct from *McKee* and inapposite to the facts in this case. Accordingly, we find that the general rule stated in *McKee* controls.

We find no genuine issue of material fact which precludes summary judgment and conclude that defendant is entitled to judgment as a matter of law under the controlling New Jersey cases. An appropriate order will be entered.

If in enunciating the broad social policies stated in *Knapp, supra,* and in remanding the record in this case, the Circuit Court intends to reach the conclusion that all Pennsylvania diversity cases involving negligence and strict liability claims against a successor corporation shall be heard on the merits, then we have reached an erroneous conclusion.