170 N.J. Super. 144 (1979)
405 A.2d 874
NATALIE LITAROWICH, AN INFANT BY HER GUARDIAN AD LITEM WALTER LITAROWICH AND WALTER LITAROWICH, INDIVIDUALLY, PLAINTIFFS,
v.
FRANCIS WIEDERKEHR, JOSEPHINE WIEDERKEHR, EUGENE WIEDERKEHR, ESKA COMPANY, A CORPORATION OF IOWA, R & S HOME AND AUTO STORES, THE ESKA COMPANY, A DELAWARE CORPORATION, AND TALLEY INDUSTRIES, INC., A DELAWARE CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
July 23, 1979.
*145 Mr. Christopher R. Wood for plaintiff (Messrs. Rafano & Wood, attorneys).
Mr. Stephen O. Mortenson for defendants The Eska Company and Talley Industries, Inc. (Messrs. Connell, Foley & Geiser, attorneys).
Messrs. McMenaman & Grasso, attorneys for defendant R & S Home and Auto Stores.
Mr. Eugene F. Lynch for defendants Wiederkehr.
COHEN, J.S.C.
The infant plaintiff was injured in 1976 while using an allegedly defective snowblower. She sued the owner and the retailer of the snowblower and several other defendants. One was The Eska Company, an Iowa corporation that made the machine in 1966. Another was Talley Industries, Inc., a publically traded Delaware corporation that purchased the assets of Eska (Iowa) in 1969. A third was The Eska Company, a Delaware subsidiary of Talley that was formed in 1969 to receive the assets of Eska (Iowa).
The matter is here on motions by Talley and Eska (Del.) for summary judgment. They say they may not be held liable for injuries caused by a defective product merely because they later bought and held the assets of the maker. Plaintiff agrees but *146 says that Talley and Eska (Del.) did more than merely buy the manufacturer's assets. They bought its name, its good will, its plant facilities, and continued its business. Eska (Iowa) received Talley stock in payment, and distributed the stock to its shareholders and then dissolved.[1] The transaction, plaintiff argues, was really a de facto merger or consolidation, in which predecessor liabilities survive. Therefore, the argument concludes, Talley and Eska (Del.) took on the contingent products liabilities of Eska (Iowa) whether they meant to do so or not.
The question whether a purchase of corporate assets is really a merger or consolidation can arise in a number of settings.[2] One of them involves contingent product liabilities.[3] It is surprising to find so few authorities analyzing and deciding the choice-of-law problems that multistate corporate acquisitions and reorganizations necessarily create. On the motions here, the appropriate choice of law is the dispositive issue.
*147 The moving parties argued that they are entitled to judgment in their favor as a matter of Delaware law,[4] but correctly concede that under New Jersey law there are material facts in dispute that would defeat the motion.[5] There is no New Jersey authority dictating the appropriate choice of law to make in the present setting. McKee v. Harris-Seybold Co., 109 N.J. Super. 555 (Law Div. 1970), aff'd 118 N.J. Super. 480 (App.Div. 1972), mentioned the issue but found it unnecessary to decide. Wilson v. Fare Well Corp., 140 N.J. Super. 476 (Law Div. 1976), did not mention it. All parties agree that New Jersey's choice-of-law rules invoke the local law of that state which has the most significant contacts and greatest governmental interest in the dispute and the parties. Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973); Rose v. Port of New York Auth., 61 N.J. 129 (1972).
Eska (Iowa) was an Iowa corporation with its manufacturing facilities in Dubuque. Talley's headquarters are in Arizona. Its tie to Delaware arises only out of its incorporation there. Its stock is traded on the New York Stock Exchange. Eska (Del.) is physically located in Dubuque, Iowa, and, like the Iowa corporation before it, sells its products in many different states. The Agreement and Plan of Reorganization executed by Talley and Eska (Iowa) mentions Talley's New York counsel and Eska's Washington, D.C., counsel, and contains a provision that it be interpreted according to Delaware law.
Most of the little attention the present conflicts question has attracted has been in the federal courts. The results have varied widely. They seem to cluster, however, in two groups, one treating the successor liability issue as one of contract *148 interpretation, and the other focusing on the consequences of the relationship between the corporate parties and the injured plaintiff.
Kloberdanz v. Joy Mfg. Co., 288 F. Supp. 817 (D.Colo. 1968), arose out of a 1964 Nebraska injury for which plaintiff sought to hold defendant liable as the 1960 purchaser of assets of the manufacturer of a 1953 product. The manufacturer was a California corporation. The purchaser of assets was a Pennsylvania corporation. The question of de facto merger or consolidation was a question of California law, said the District Court sitting in Colorado, because the Colorado courts would interpret the contract of acquisition according to the law of the state where it was made.[6]Lex loci contractu no longer requires that result in New Jersey, but the case has another significance. If the law of California controlled the District Court, it was because the court conceived the question of successor liability as a question to be answered by the contract between the corporations. It would follow, then, that the corporations which made the contract were free to shape the consequences of their transaction and to choose a body of law and impose it on contingent tort claimants.[7]
The same problem came up in Shane v. Hobam, Inc., 332 F. Supp. 526 (E.D.Pa. 1971), where Judge Higginbotham decided the conflict-of-law issue by inference. The offending machine had been manufactured in New York in 1948 by a company that sold its assets in 1962 to defendant. Plaintiff's injury took place in 1968 in Pennsylvania. The District Court sitting in Pennsylvania discussed various theories of liability. Included in the *149 discussion of liability based on the manner of acquisition is a citation to an opinion applying New York law to such a question. The footnote explains that the agreement for the purchase of assets provided for its interpretation under New York law. Thus, Judge Higginbotham apparently accepted the Kloberdanz view of the matter as one of contract interpretation.[8] One supposes that he would also permit the corporate parties to choose a body of law to control the extent of successor liability for contingent tort claims.
Shannon v. Samuel Langston Co., 379 F. Supp. 797 (W.D.Mich. S.D. 1974) took a different tack. There a Michigan plaintiff had lost his arm in a machine made in New Jersey by a New Jersey corporation. Before the accident the assets of the New Jersey manufacturer were sold to a Delaware corporation headquartered in Ohio, which continued New Jersey operations through a New Jersey subsidiary. The assets purchase agreements were made in Ohio. The opinion does not say whether the agreements expressed a choice of law.
The District Court searched the states for significant contacts and interests and selected New Jersey law for the intimate contacts of both the predecessor and successor manufacturers with that state. Plaintiff prevailed under New Jersey law. The court does not say whether he would have done so under Michigan or Ohio law.
Lopata v. Bemis Co., 406 F. Supp. 521 (E.D.Pa. 1975), represents the most thorough published analysis of the question facing this court. There, a New Jersey resident was injured at his New Jersey job by an allegedly faulty machine. He received New Jersey worker's compensation. He then moved to Pennsylvania, his former home, before starting suit. The machine had been made in Indiana by an Indiana corporation. It later sold most of its Indiana assets to a Missouri corporation pursuant to an *150 agreement which, by its terms, was to be interpreted according to Indiana law.
The plaintiff urged application of Pennsylvania law. The defendant argued for Indiana law. The court held for the law of New Jersey. It was the place of injury, a fact deemed important since it involved not only local worker's compensation and the allocation of the cost of employment injuries but also the accountability of corporate suppliers of machinery used in local employment. Moreover, plaintiff was a New Jersey resident when injured and, therefore, was entitled to the benefit of the duties New Jersey imposes on corporations that choose to do business here. Since the manufacturer subjected itself to New Jersey tort law by making a product for sale here, the court said, a successor corporation should be subjected to the same liabilities. In answer to the arguments of Indiana corporate location and contractual choice of Indiana law, the court pointed out that the issue was one of tort liability to third persons who were not parties to the corporate arrangements and who should not be bound thereby.
Menacho v. Adamson United Co., 420 F. Supp. 128 (D.N.J. 1976), followed Lopata and applied New Jersey law where a New Jersey resident was injured at his New Jersey employment by a machine made by an Ohio corporation whose assets subsequently were brought by a Pennsylvania corporation.
The present case is about a New Jersey injury to a New Jersey resident caused by a snowblower manufactured for interstate sale and sold to a New Jersey retailer. New Jersey's contacts and interest are plain, even without the employment element found in Lopata and Menacho. Delaware's interest is not so clear. It seems little more than an interest in the interstate sanctity of protective corporate laws.[9] Iowa and *151 Arizona have as much interest in Delaware corporations that physically operate there. The corporate parties chose a body of local law to govern themselves, but they cannot thereby shut out a tort claimant whose concerns were unrepresented in the acquisition arrangements.
The real interest opposing application of the law of the state of residence and injury is not the interest of another state. It is the interest of the involved corporations in having an identifiable and reliable body of law by which to order their affairs. Corporate planners want to know when an acquisition will include contingent product liabilities and when it will not. Plans for escrows and indemnities can be made. The acquisition price may be affected. But it is more important that a worker's or consumer's cause of action for product fault not disappear in the shuffling of corporate papers and the invocation of protective foreign law.
Eska (Iowa) chose to sell its products in New Jersey, among other states. It subjected itself to New Jersey's view of what tort law was necessary to protect its workers and consumers. One who buys Eska's physical assets and operates a business with them is similarly subject to New Jersey's view of what is necessary to protect its workers and consumers.[10] Predictability in corporate transactions may be desirable. But, it does not weigh heavy against the need for a meaningful remedy for an injured person with a valid cause of action for product fault.
New Jersey law will be applied in this case, then, because New Jersey has an interest greater than the state of incorporation *152 or the state where the corporations physically operate. That does not necessarily mean, however, that our law should always be preferred. It may well be argued in another case that the foreign law affords our resident a better remedy. In such a case, New Jersey may have no interest either in applying its law where it will disadvantage its own resident, or in giving foreign corporations the benefit of liability restrictions their own states would not locally apply. That state of facts is not before this court.
Defendants' motions for summary judgment denied.
NOTES
[1] Eska (Iowa) has never been served and has not participated in this case. Normally, the corporate seller of assets dissolves after satisfying creditors and shareholders. Disappearance of the corporate manufacturer and the usual nonliability of shareholders for post-dissolution claims make successor liability a matter of vital concern. See Henn and Alexander, "Effect of Corporate Dissolution on Products Liability Claims," 56 Cornell L.Rev. 865 (1971). Especially troublesome are cases in states like New Jersey, where strict liability claims accrue only when actual injury occurs, Rosenau v. New Brunswick, 51 N.J. 130 (1968), which may be many years after corporate dissolution.
[2] Generally, see Annotation, "Similarity of Ownership or Control as Basis for Charging Corporation Acquiring Assets of Another with Liability for Former Owner's Debts," 49 A.L.R.3d 881 (1973). Also affected by the distinction are the rights of pre-dissolution creditors, Jackson v. Diamond T. Trucking Co., 100 N.J. Super. 186 (Law Div. 1968), and of shareholders. Good v. Lackawanna Leather Co., 96 N.J. Super. 439 (Ch.Div. 1967); Applestein v. United Board & Carton Corp., 60 N.J. Super. 333 (Ch.Div. 1960), aff'd 33 N.J. 72 (1960); 15 Fletcher, Cyclopedia of Corporations (Perm.Ed.) § 7122.
[3] See Note, "Assumption of Products Liability in Corporate Acquisitions," 55 B.U.L.Rev. 86 (1975).
[4] They rely on 8 Del.Code § 271, and Hariton v. Anco Electronics, Inc., 40 Del. Ch. 326, 182 A.2d 22 (1962), aff'd 41 Del. Ch. 74, 188 A.2d 123 (Sup.Ct. 1963).
[5] Wilson v. Fare Well Corp., 140 N.J. Super. 476 (Law Div. 1976); McKee v. Harris-Seybold Co., 109 N.J. Super. 555 (Law Div. 1970), aff'd 118 N.J. Super. 480 (App.Div. 1972).
[6] In diversity jurisdiction a federal court applies the conflicts rules of the state where it sits. Klaxon Co. v. Stentor Electrical Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).
[7] Within limits, the parties may choose a body of local law to govern their transaction. Shotwell v. Dairymen's League Coop. Ass'n, 22 N.J. Misc. 171, 37 A.2d 420 (Dist.Ct. 1944).
[8] The opinion cites Kloberdanz on another point.
[9] Compare § 301 with § 302 of Restatement, Conflict of Laws 2d. See also, Tankersley v. Albright, 374 F. Supp. 538 (N.D.Ill.E.D. 1974).
[10] New Jersey's attitude toward successor liability is not unusually liberal. See Judge Coolahan's discussion in Menacho v. Adamson United Co., 420 F. Supp. 128 (D.N.J. 1976); Knapp v. North American Rockwell Corp., 506 F.2d 361 (3 Cir.1974), cert. den. 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975); Cyr. v. B. Offen & Co., Inc., 501 F.2d 1145 (1 Cir.1974).