**Mildred DEBNAM, Individually and as Personal Representative of the Estate of Plummer Debnam, Appellant,**

v.

**CRANE COMPANY, Appellee.**

**No. 06–CV–952.**

District of Columbia Court of Appeals.

Argued June 4, 2007.
Decided July 23, 2009.

---

Peter T. Enslein, with whom Daniel A. Brown, Bethesda, MD, was on the brief, for Appellant.

David T. Case, with whom Brendon Fowler, Washington, DC, was on the brief, for Appellee.

Before WASHINGTON, Chief Judges, GLICKMAN, Associate Judge, and KING, Senior Judge.

WASHINGTON, Chief Judge:

The trial court granted summary judgment in favor of Appellee, the Crane Company ("Crane"), in this wrongful death lawsuit brought by Appellant, the Estate of Plummer Debnam ("Debnam"), for injuries suffered as a result of asbestos poisoning that was allegedly caused by boilers that were manufactured by National–U.S. Radiator Corporation ("National"), a company that had sold its property and assets to Crane as part of an asset purchase agreement. The trial court determined that no reasonable person could find that Crane's agreement with National included an agreement that Crane would assume liability for the types of injuries Appellant complains of here. Because we find the wording of the agreement to be ambiguous on that point, we reverse and remand this case for trial.

## I.

## FACTS

Plummer Debnam died of lung cancer and asbestosis. While employed with the District of Columbia Public Schools ("DCPS") from 1964 through 1998, Mr. Debnam worked with and around boilers that contained, and were covered with, asbestos materials. Among these boilers were two Pacific brand boilers that were acquired from National in 1948. In 1959, Crane and National executed a Purchase Agreement ("1959 Agreement"), whereby Crane purchased virtually all of National's property and assets, and assumed National's warranty liabilities with respect to its products, including warranties associated with the boilers that were sold to DCPS.

Paragraph 17 of the 1959 Agreement ("Paragraph 17") between Crane and National addresses the two companies' obligations to each other regarding warranties issued by National for its products. Paragraph 17 reads, in pertinent part:

Crane agrees that, on and after the date of closing, it will assume, take over and perform all obligations of every kind whatsoever of National under warranties of products sold by National in the usual and ordinary course of business, prior to the date of closing, except that National shall reimburse Crane on demand for the actual direct cost, including factory overhead, to Crane in honoring such warranties during the period of five months, commencing on the date of closing, not exceeding in the aggregate the sum of $20,000.00 plus the actual direct cost including factory overhead of meeting the claim relating to the electro-hydraulic crane on USNS Point Barrow. To induce Crane to assume such liability, National hereby warrants and represents that it does not know of or have any reason to anticipate any prospective abnormal or extraordinary warranty claims, other than warranty claims in the ordinary course of business. This warranty shall survive settlement for twelve months.

Paragraph 29 of the 1959 Agreement states that the contract shall be construed

and enforced in accordance with the laws of New York.

On October 11, 1961, Crane and National entered into a second agreement ("1961 Agreement"), the purpose of which was to "revise," "clarify," and "ratify" issues pertaining to the 1959 Agreement. The 1961 Agreement explicitly states that the obligations of Crane referenced in Paragraph 17 were "reacknowledged, ratified and confirmed by Crane."

In December 2003, Mr. Debnam first asserted his claim against Crane, as well as defendants AVCO, Thos. Somerville Co., and Sid Harvey Industries, Inc. The complaint alleged, *inter alia*, that Mr. Debnam was in frequent contact with the defendants' asbestos products and that this exposure caused Mr. Debnam to contract asbestosis, lung cancer, and other pulmonary-related problems. On the eve of trial, Mr. Debnam, AVCO, Thos. Somerville Co., and Sid Harvey Industries, Inc., agreed to submit their controversy to binding arbitration.[1] Soon after the arbitration took place, Mr. Debnam passed away and Mrs. Mildred Debnam, individually and as Mr. Debnam's personal representative, filed a wrongful death and survival complaint against defendant Crane, the only party to the original complaint that did not participate in the arbitration. Appellant sought damages under theories of negligence, strict liability, and breach of warranty.

Crane moved for summary judgment asserting that its agreement to assume National's liability for "warranties of product" did not encompass the claims presented in this case. The trial court granted Crane's Motion for Summary Judgment, holding, *inter alia*, that the language used in Paragraph 17 appeared only to "contemplate the traditional obligation a products seller owes to the buyer to repair or replace a defective product." Accordingly, the trial court held that, drawing all reasonable inferences from the evidence in Appellant's favor, there was no evidence upon which a jury could reasonably interpret Paragraph 17 "to include an assumption by Crane of National's liability for any of the [third-party] claims in the complaint."

The trial court found additional support for its determination in the Agreement's choice of New York law provision and the fact that, in 1959, New York courts had not yet recognized third-party claims for injuries suffered as a result of manufacturer defects.[2] Based on these findings, the trial court concluded that to "reasonable businessmen engaged in an asset sale in 1959," Paragraph 17 is unambiguous and "does not establish a platform for the type of breach of warranty claims Plaintiff alleges here."

1. The trial court dismissed the claim against Crane without prejudice on February 7, 2005. On that same day, the trial court issued an order staying the matter as to the remaining defendants, pending the completion of arbitration. Upon completion, the arbitration agreement was incorporated by reference in the trial court's order. There are no remaining claims against AVCO, Sid Harvey, and Thos. Somerville.

2. In 1959, third-parties, individuals who did not purchase a product from a manufacturer, could not bring a breach of warranty claim under New York law against the manufacturer for an allegedly defective product, because there was no contractual privity between the third-party and the manufacturer. *See, e.g., Campo v. Scofield,* 301 N.Y. 468, 95 N.E.2d 802, 803 (1950) ("Since there is no claim of privity of contract between the defendant manufacturer and plaintiff, the complaint cannot, of course, be sustained on any theory of implied warranty."); *see also Greenberg v. Lorenz,* 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773 (1961) (discussing long-standing rule: "There can be no warranty, express or implied, without privity of contract[.]").

## II.

## ANALYSIS

 When reviewing the trial court's grant of a motion for summary judgment, this court conducts an independent review of the record and applies the same standard as the trial court. *See Clawson v. St. Louis Post–Dispatch, L.L.C.,* 906 A.2d 308, 312 (D.C.2006); *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). We will affirm the trial court's decision if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c); *accord Clawson, supra,* 906 A.2d at 312.

 Appellant contends that the plain language of Paragraph 17, when viewed in the light most favorable to Appellant, precludes granting summary judgment in Crane's favor. More specifically, Appellant argues that, because "all" means *all,* Crane "expressly or impliedly" agreed to assume all of National's liabilities for breaches of warranties of product,[3] and therefore summary judgment should have been granted in Appellant's favor.

### Contract Interpretation

 The first step in interpreting a contract is to determine what a reasonable person in the position of the parties would have thought the disputed language meant. *See 1010 Potomac Assocs. v. Grocery Mfrs.*

*of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984). "The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms," and ascertaining the meaning "in light of all the circumstances surrounding the parties at the time the contract was made." *Id.* at 205–06 n. 7. Extrinsic evidence may be used to "determine the circumstances surrounding the making of the contract," however, it may not be relied upon to show the subjective intent of the parties absent ambiguity in the contract's language. *Id.* at 205–06; *accord Patterson v. District of Columbia,* 795 A.2d 681, 683 (D.C.2002).

 If a contract is reasonably or fairly susceptible to different constructions or interpretations, it is ambiguous. *See Yazdani v. Access ATM,* 941 A.2d 429, 432 (D.C.2008). In determining whether a contract is ambiguous, we examine the document on its face, giving the language used its plain meaning. *See Akassy v. William Penn Apartments Ltd. P'ship,* 891 A.2d 291, 299 (D.C.2006); *see also* 11 WILLISTON ON CONTRACTS § 30:11, at 139 (4th ed. 1999).

 If the court determines that the contract is unambiguous, it should rely on the contract's terms to provide "the best objective manifestation of the parties' intent[.]" *1010 Potomac Assocs., supra,* 485 A.2d at 205 (citing *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 475 A.2d 382, 385 (D.C.1984)). However, if the provisions of the contract are ambiguous, the

---

**3.** Appellant seeks to hold Crane liable as a successor of National based on its contractual assumption of liability under National's product warranties. *See Bingham v. Goldberg Marchesano, Kohlman, Inc.,* 637 A.2d 81, 89–90 (D.C.1994) (citing *Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1456, *reh'g denied,* 765 F.2d 154 (11th Cir.1985)); *see also Liability of Successor Corporation for Injury or Damage Caused by Product Issued by Predecessor, Based on Successor's Express or Implied*

*Agreement to Assume Liability or Where Transfer Was Fraudulent, in Bad Faith, or Without Adequate Consideration,* 112 A.L.R.5th 113 (2003). Generally, under the assumption of liability theory, "a business entity which acquires the assets of another business is not liable for its predecessor's liabilities and debts," unless "the buyer expressly or impliedly agrees to assume such debts." *Bingham, supra,* 637 A.2d at 89–90 (citing *Bud Antle, supra,* 758 F.2d at 1456).

correct interpretation becomes a question for a factfinder. *See Rastall v. CSX Transp., Inc.,* 697 A.2d 46, 51 (D.C.1997) (internal quotations omitted) ("ambiguity in a contract raises a genuine issue of material fact, which is for the factfinder to resolve"); *but see Mamo v. Skvirsky,* 960 A.2d 595 (D.C.2008) (even though the language of the contract provision was ambiguous, the matter could be resolved on summary judgment because the evidence of the parties' intent was so strong that it removed any doubt as to the proper interpretation of the contractual provision).

### Paragraph 17

■ The trial court relied on the plain language of Paragraph 17 of the 1959 Agreement to reach its conclusion that Crane did not agree to assume liability for a third-party breach of warranty claim that might be asserted against National after the date of the Agreement.

The trial court, in performing its responsibility to "endeavor to ascertain what a reasonable person in the position of the parties would have thought the words [of the contract] meant," *Akassy, supra,* 891 A.2d at 299, concluded that despite the very broad language of the first clause of Paragraph 17, the exception clause that follows, and provides for a five-month reimbursement to Crane for "any actual direct costs, including overhead in honoring such warranties", was clearly intended by the parties to limit Crane's assumption of National's warranty obligations to only the repair or replacement of the assets subject to the 1959 Agreement.

While the trial court's interpretation of the language of Paragraph 17 may be a reasonable interpretation, we do not agree that it is the only reasonable interpretation of Paragraph 17. As Appellant points out, another equally reasonable interpretation is that Crane was in fact agreeing "to assume, take over, and perform all obligations of every kind whatsoever under warranties of products sold by National", and that Crane's explicit promise included the warranty obligation that Appellant claims was breached in this case. Appellant further asserts that it is equally plausible that the exception language contained in Paragraph 17 is unrelated to Crane's broad agreement to honor any future third-party warranty obligations of National.

We agree with Appellant that a reasonable factfinder could find that reasonable businessmen in 1959 could have understood the two clauses in Paragraph 17 to be independent of one another to the extent that one purported to limit the potential liability of the successor company. There is nothing inconsistent in such a reading of the 1959 Agreement since the exception clause does not purport to exclude any particular type of warranty claim. In fact, as Appellant points out, it is just as likely that the parties included the exception language for no reason other than to provide an incentive to Crane to enter into the Agreement. From Crane's perspective, knowing that it had five months to generate an income stream without having to worry about the costs of maintaining the equipment subject to the Agreement might have been a significant incentive to make the deal, and for National, the reimbursement amount it was agreeing to provide may have seemed modest given Crane's agreement to assume any and all future warranty obligations, without limitation, related to the assets. Because the language of Paragraph 17 is susceptible to either interpretation, we find Paragraph 17 of the 1959 Agreement to be ambiguous.

The trial court found additional support for its interpretation, however, by looking to the 1959 Agreement's choice-of-law pro-

vision, which provided that any disputes arising under the Agreement would be decided under New York law. The trial court found this fact to be very significant because in 1959, when the Agreement was initially executed, New York law did not recognize a claim for breach of warranty unless the party was in privity of contract with the product manufacturer.[4] *See, e.g., Campo, supra,* 95 N.E.2d at 803; *Greenberg, supra,* 213 N.Y.S.2d 39, 173 N.E.2d at 773. From that, the trial court concluded that because Appellant was not in privity of contract with National, and therefore, could not have sued National in 1959 for the injuries suffered in this case, Crane could not have intended for the broad language used in Paragraph 17 to cover claims like those in Appellant's complaint. Thus, consistent with the trial court's other findings, the trial court decided that no reasonable factfinder could find that a reasonable businessperson, in the position of the parties in 1959, would have agreed to assume the warranty obligations presented here.

While it is indeed often instructive to look at a contract's choice-of-law provision to help discern the parties' intent, it is less helpful here than in cases where the parties themselves are disputing the meaning of a particular phrase in an agreement. In those cases, the fact that the parties themselves chose to have the agreement interpreted under a particular jurisdiction's laws may help the court discern how the parties intended such a dispute to be resolved. However, courts do not typically consider the choice-of-law clause to have the same significance when addressing what law applies for breach of warranty claims, especially in tort causes of action. Generally, in cases like the one at bar, the choice-of-law provision is much less helpful because, under traditional tort law concepts, the law of the jurisdiction where the injury occurs is generally a much more significant factor.[5] For example, in *Lopata v. Bemis Company, Inc.,* 406 F.Supp. 521 (E.D.Pa.1975), a worker injured by a machine in a New Jersey plant sued the successor-in-interest to the machine's manufacturer in Pennsylvania where the worker lived and the successor corporation engaged in business. *Id.* at 522–23. The court concluded that, even though the asset purchase agreement between the machine's manufacturer and the successor corporation was governed by Indiana law, whether the successor incurred third-party tort liability for the allegedly defective machine was governed by New Jersey law because New Jersey had the most contacts with the injury.[6] *Id.* Therefore, the fact

---

4. *See also* N.Y. Uniform Commercial Code Law § 2–318 (1975) (eliminating privity requirement by statute); *Codling v. Paglia,* 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622, 626 (1973) (eliminating privity requirement under common law).

5. *See, e.g., District of Columbia v. Coleman,* 667 A.2d 811, 816 (D.C.1995) (general rule is to consider place where injury occurred in determining which jurisdiction's law to apply in tort cases); *see also Richards v. United States,* 369 U.S. 1, 11–13, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ("The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of the place of injury to the substantive rights of the par-

ties."); 63B Am.Jur.2d *Products Liability* § 1555 (2008).

6. *See also Barron v. Kane & Roach, Inc.,* 79 Ill.App.3d 44, 34 Ill.Dec. 569, 398 N.E.2d 244, 246 (1979) (dismissing party's contention that construction of the choice-of-law provision is related to determining successor corporation's liability for injuries sustained by user of product manufactured by its predecessor); *Litarowich v. Wiederkehr,* 170 N.J.Super. 144, 405 A.2d 874, 878 (Law Div.1979) (applying law of state where injury occurred upon concluding that "[t]he corporate parties chose a body of local law to govern themselves, but they cannot thereby shut out a tort claimant whose concerns were unrepresented

that, in 1959, New York law had not yet recognized a cause of action for injuries suffered by persons not in privity of contract with a manufacturer is not particularly persuasive since, under the Agreement, Crane was also acquiring warranty liability related to products sold by National that were situated in states that had already abandoned the privity requirement.

According to the Agreement, Crane not only assumed warranty liability for National's products that were situated in New York, Crane also assumed warranty liability for National's products that were located in various other states, including California and Ohio, where state courts had already dispensed with the privity requirement in these types of complaints. *See, e.g., Burr v. Sherwin Williams Co.,* 42 Cal.2d 682, 268 P.2d 1041, 1048–49 (1954) (discussing exceptions to the privity doctrine in actions for breach of express or implied warranties, including an exception for purchasers who bought products from a dealer but could recover from the manufacturer after relying on the representations made by the manufacturer in labels or advertising); *Rogers v. Toni Home Permanent Co.,* 167 Ohio St. 244, 147 N.E.2d 612 (1958) (holding that consumer lacking privity could bring a claim against hair product manufacturer for breach of express warranty after being harmed by the product). Also in 1961, when the Agreement between Crane and National was re-ratified, even New York law had begun to move away from requiring privity of contract in order to sustain these types of warranty claims. *See Greenberg, supra,* 213 N.Y.S.2d 39, 173 N.E.2d at 773 (New York Court of Appeals refused to confine the privity requirement to the first-party purchaser where an infant was injured by food purchased by the child's father). Thus, the trial court's reliance on the

in the acquisition arrangements''); 63B Am.

choice-of-law clause to buttress its conclusion that the language of Paragraph 17 has but one reasonable interpretation does not carry much force.

### CONCLUSION

In sum, because Paragraph 17 could reasonably be read as having more than one reasonable interpretation, and the choice-of-law clause does not so clearly support the trial court's conclusion that no reasonable juror could find that Crane expressly or impliedly agreed to assume the warranty obligations that Debnam claims were breached here, summary judgment was improper.

Accordingly, the decision of the trial court is

*Reversed.*

Jur.2d *Products Liability* § 1555, *supra* note 5.