# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 19-7167**

**September Term, 2020**

FILED ON: MARCH 16, 2021

MILITARY ORDER OF THE PURPLE HEART SERVICE FOUNDATION, INC., A FLORIDA CORPORATION AND MOPHSF HOLDINGS, LLC, A FLORIDA LIMITED LIABILITY COMPANY,
> APPELLEES

v.

MILITARY ORDER OF THE PURPLE HEART OF THE UNITED STATES OF AMERICA, INC., A DISTRICT OF COLUMBIA CORPORATION,
> APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00666)

Before: KATSAS, RAO and WALKER, *Circuit Judges*.

## JUDGMENT

The Court has considered this appeal on the record from the United States District Court for the District of Columbia and on the parties' briefs and oral argument. The Court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED** that the judgment of the district court be **AFFIRMED**.

This appeal concerns contract and trademark disputes among three organizations: the Military Order of the Purple Heart of the United States of America, Inc. (the Order), the Military Order of the Purple Heart Service Foundation, Inc. (the Foundation), and the Military Order of the Purple Heart Service Foundation Holdings, LLC (Holdings). The Order provides charitable services to veterans, and the Foundation has long funded its operations. Holdings, which the Foundation owns, licensed the Order to use its "Purple Heart" word mark for certain activities. The funding is governed by a 2016 agreement between the Order and the Foundation. Use of the trademark is governed by a 2017 agreement between the Order and Holdings.

In 2018, the Foundation—facing financial problems—warned the Order of possibly reduced funding for 2019. The Order began its own fundraising, which included diverting donations away from the Foundation and using the "Purple Heart" mark without permission from Holdings.

The Foundation and Holdings sued the Order for breach of the 2016 funding agreement, breach of the 2017 licensing agreement, and trademark infringement. The Order filed its own suit for breach of the funding agreement. The cases were consolidated, and the district court held a bench trial. The court ruled for the Foundation and Holdings on all these claims, and the Order appealed. The parties agree that District of Columbia law governs the funding agreement and that Florida law governs the licensing agreement.

On its own affirmative claim, the Order contends that the Foundation breached two provisions of the funding agreement by failing to fully fund its budget. First, the Order invokes paragraph 3, which requires the Foundation, after funding itself and Holdings, to "fund the reasonable budget submitted to it by the Order." The district court found no evidence that the Foundation had adequate resources in 2019 to fund itself and Holdings with money left over for the Order. The Order contends that the possibility of insufficient resources would amount at most to an unproven affirmative defense. But paragraph 3 establishes a "prioritization," and the question whether Holdings violated it goes to breach—an issue on which the Order bore the burden of proof. *Banze v. Am. Int'l Exps., Inc.*, 454 A.2d 816, 817 (D.C. 1983). Second, the Order invokes paragraph 5.2, which provides that if the Foundation "does not fund the Order, the assets or control of [Holdings] will be transferred to the Order." But the ordinary meaning of "fund" does not suggest any particular amount of funding. *See*, *e.g.*, *Funds*, *The American Heritage Dictionary* (5th ed. 2018) ("To provide funds for."). Moreover, to the extent that "fund" was ambiguous with regard to full funding, the district court properly considered extrinsic evidence of "what a reasonable person in the position of the parties would have thought the disputed language meant." *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006) (cleaned up); *see also Debnam v. Crane Co.*, 976 A.2d 193, 197–98 (D.C. 2009) ("[I]f the provisions of the contract are ambiguous, the correct interpretation becomes a question for a factfinder."). Negotiating history showed that the Foundation repeatedly refused to use the phrase "properly fund" in paragraph 5.2. Based on text and negotiating history, the district court permissibly found that paragraph 5.2 did not require the Foundation to fully fund the Order's budget.

The Order next contends that its fundraising efforts did not trigger paragraph 6.1 of the funding agreement. That provision states that if "the Order seeks to 'disenfranchise' or takes other adverse action against the Service Foundation," then the entire funding agreement "will be considered null and void." In ruling for the Foundation on this claim, the district court found that the Order "diverted a $50,000 donation from the Foundation to the Order by directing the donor to write the check to the Order instead of to the Foundation." Under any reasonable reading, that constituted "other adverse action … against the Foundation." *See Adverse Action*, *Black's Law Dictionary* (11th ed. 2019) ("A decision or event that unfavorably affects a person, entity, or association."). And under paragraph 6.1, this breach—paired with the Order's undisputed failure to cure it—rendered the funding agreement null and void.

The remaining claims concern the Order's use of the "Purple Heart" mark in its fundraising without the approval from Holdings. The district court held that this unauthorized use violated the licensing agreement and two provisions of the Lanham Act. The licensing agreement permitted the Order to use Holdings' marks, but "only in connection with charitable fundraising for specific projects that are approved by [Holdings] and are consistent with [the Order's] mission statement." Although some of the contested advertising simply referenced the Order's own name, "Military Order of the Purple Heart," other advertising used the word mark "Purple Heart." Because the Order breached the licensing agreement and then failed to cure the breach, the district court correctly concluded that Holdings was entitled to terminate the licensing agreement.

The Lanham Act prohibits the use of a registered mark in a manner "likely to cause confusion," 15 U.S.C. § 1114(1)(a), as well as the use of any term or name in a manner "likely to cause confusion" about the affiliation of the user with another person, *id.* § 1125(a)(1). Here, we have no trouble affirming the district court's conclusion that the Order's use of the "Purple Heart" mark was likely to cause confusion. The Order's name (the Military Order of the Purple Heart of the United States of America, Inc.) is nearly identical to that of Holdings (the Military Order of the Purple Heart Service Foundation Holdings, LLC). Indeed, Holdings' own national commander admitted at trial that the public frequently confuses the Order and the Foundation, which also shares a nearly identical name. That is enough to support a finding of consumer confusion. *See Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639 (D.C. Cir. 1982) (per curiam) (upholding confusion finding where "the marks are identical and the record contains evidence showing that the businesses are so related that they are likely to be connected in the mind of a prospective buyer"). Finally, the Order contends that its uses of the mark fell within the fair-use defense to copyright infringement. *See* 15 U.S.C. § 1115(b)(4). Because the Order did not raise this defense at trial as to all of the contested uses, we do not consider it. *See Flynn v. Comm'r*, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001).

For these reasons, we affirm the district court's judgment. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk