**ALLSTATE INSURANCE COMPANY,
et al., Plaintiffs,**

**v.**

**COUNTRYWIDE FINANCIAL
CORPORATION, et al.,
Defendants.**

Case No. 2:11–CV–05236–MRP (MANx).

United States District Court,
C.D. California.

Oct. 21, 2011.

Daniel L. Brockett, Jeremy Andersen, Quinn Emanuel Urquhart Oliver and Hedges, Los Angeles, CA, David Dyer Burnett, Marc L. Greenwald, Quinn Emanuel Urquhart Oliver and Hedges, New York, NY, for Plaintiffs.

Brian Charles Devine, Brian E. Pastuszenski, Caroline H. Bullerjahn, Inez H. Friedman–Boyce, Goodwin Procter LLP, Boston, MA, Lloyd Winawer, Goodwin Procter LLP, Matthew W. Close, O'Melveny and Myers, David Siegel, Holly L. Gershow, Irell & Manella LLP, Los Angeles, CA, Mark Holland, Goodwin Procter LLP, Asher Louis Rivner, Bradley J. Butwin, Jonathan Rosenberg, William J. Sushon, O'Melveny & Myers LLP, Keara M. Gordon, DLA Piper U.S. LLP, Ronald P. Fischetti, New York, NY, Julie Michelle Davis, A. Matthew Ashley, Allison Lauren Libeu, Irell and Manella LLP, Newport Beach, CA, Frank M. Scaduto, Michael D. Torpey, Orrick Herrington & Sutcliffe

LLP, San Francisco, CA, Michael C. Tu, Orrick Herrington & Sutcliffe LLP, Matthew D. Caplan, Nicolas Morgan, DLA Piper LLP, Jenifer Q. Doan, Joshua G. Hamilton, Peter Young Hoon Cho, William F. Sullivan, Paul Hastings LLP, Jeanne A. Fugate, Andrew A. Esbenshade, Christopher G. Caldwell, David C. Codell, Caldwell Leslie & Proctor, Jennifer M. Sepic, Bingham McCutchen LLP, Los Angeles, CA, David A. Priebe, Rajiv S. Dharnidharka, DLA Piper LLP, East Palo Alto, CA, Shirli Fabbri Weiss, DLA Piper LLP, San Diego, CA, Leiv H. Blad, Jr., Zarema V. Arutyunova, Bingham McCutchen LLP, Washington, DC, for Defendants.

## ORDER RE MOTIONS TO DISMISS THE COMPLAINT

MARIANA R. PFAELZER, District Judge.

## I. INTRODUCTION & BACKGROUND

This securities action concerns residential mortgage-backed securities ("RMBS") purchased by Allstate Insurance Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, and American Heritage Life Insurance Company (collectively "Allstate" or "Plaintiffs") in multiple offerings structured and sold by several of the defendants. Allstate Insurance Company and Allstate Life Insurance Company are referred to as the "Illinois Plaintiffs." The complaint alleges federal and state causes of action against Countrywide Financial Corporation ("CFC" or "Countrywide"), three Countrywide subsidiaries, the SPVs that issued the RMBS Certificates,[1] Bank of America, its subsidiary NB Holdings Corp., and several of Countrywide's former officers and directors. The various defendants are referred to as the Countrywide Defendants,[2] the Depositor Defendants,[3] the Individual Defendants,[4] and the Bank of America Defendants.[5]

This case only recently came before the Court, but it has a complicated and relevant procedural history. Various plaintiffs have been attempting to recover alleged losses on Countrywide RMBS since the end of 2007. In November 2007, David Luther filed a putative class action on behalf of himself and purchasers of several hundred Countrywide-issued RMBS in the California state court.[6] In June of 2008, the Washington State Plumbing and Pipefitting Pension Fund Trust filed a similar

---

1. A Certificate is a document that shows ownership of a mortgage backed security issued pursuant to a registration statement and prospectus supplement in a public offering. Each Certificate represents a particular tranche within an offering. Because "Certificate" refers to the document evidencing ownership of a specific tranche, the Court uses the terms "tranche" and "Certificate" somewhat interchangeably. An Offering refers to the process by which the Certificates were sold to Plaintiffs. The Offering Documents refer to the Registration Statements, Prospectuses and Prospectus Supplements, Term Sheets, and other written materials pursuant to which the Certificates were offered.

2. The Countrywide Defendants are: Countrywide Financial Corporation ("CFC"), Countrywide Home Loans, Inc. ("CHL"), Coun-

trywide Capital Markets ("CCM"), and Countrywide Securities Corporation ("CSC").

3. The Depositor Defendants are: CWALT, Inc., CWMBS, Inc., CWABS, Inc., and CWHEQ, Inc.

4. The Individual Defendants are: Angelo R. Mozilo, Stanford L. Kurland, David A. Spector, Eric P. Sieracki, Ranjit Kripalani, Jennifer S. Sandefur, David A. Sambol, and N. Joshua Adler.

5. The Bank of America Defendants are: Bank of America Corp. and NB Holdings Corp.

6. *Luther v. Countrywide Home Loans Servicing LP*, No. BC 380698 (Cal.Super.Ct. Nov. 14, 2007).

action in state court seeking to represent purchasers of several hundred Offerings.[7] Those cases were later consolidated into one case (referred to hereafter as *Luther*) and amended to assert claims on behalf of yet more Offerings. This despite the fact that the *Luther* named plaintiffs had purchased Certificates in only a small fraction of the Offerings that they purported to represent. The *Luther* case was removed to federal court. The Court remanded to state court under the Class Action Fairness Act ("CAFA"), and was affirmed by the Ninth Circuit. The state court then dismissed the case under the Securities Litigation Uniform Standards Act ("SLU-SA"). That decision was reversed and remanded on appeal. The suit is presently pending in California state court.

While the *Luther* appeal was pending in state court, the *Luther* plaintiffs filed an identical suit before this Court, captioned *Maine State Retirement System v. Countrywide Financial Corp.*, No. 2:10–CV–0302 MRP (MANx) ("*Maine State*"). In *Maine State*, this Court found the claims as to most of the 427 Offerings to be time-barred under Section 11's three-year statute of repose. Specifically, the Court held that the doctrine of *American Pipe* tolled the statute of limitations only for those Certificates that the named plaintiffs in the prior putative class actions had standing to sue, i.e., those tranches that the *Luther* named plaintiffs had actually purchased. *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F.Supp.2d 1157, 1166–67 (C.D.Cal.2010) ("*Maine State I*"); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10–CV–0302 MRP (MANx), 2011 WL 4389689, at *6 (C.D.Cal. May 5, 2011) ("*Maine State III*"). The Court also dismissed Bank of America Corp. and NB Holdings Corp. from the *Maine State* case, holding that the plaintiffs had failed

to allege a *de facto* merger claim under Delaware law. *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10–CV0302 MRP (MANx), 2011 WL 1765509, at *8–9 (C.D.Cal. Apr. 20, 2011) ("*Maine State II*").

After the *Maine State I* ruling, which barred the claims of Allstate from that action, Allstate filed the Complaint in the Southern District of New York. ECF No. 1. In addition to the Securities Act claims asserted in *Maine State*, Allstate asserted several Exchange Act claims, as well as state law fraud, aiding and abetting, negligent misrepresentation, and successor liability. *Id.* Defendants moved to transfer the case to this Court. Citing apparent "judge-shopping," Judge Hellerstein granted the transfer motion, but not before the parties had fully briefed the Defendants' various motions to dismiss under New York and Second Circuit law. Order Granting Motion to Transfer, ECF No. 116. This Court ordered additional briefing to clarify the choice of law and state law issues, and then permitted a second round of supplemental briefing on choice of law. The issues now have been fully briefed, and the Court heard extensive oral argument on September 21, 2011.

## II. CHOICE OF LAW

Before embarking on a substantive analysis, the Court must determine which law to apply to each of Plaintiffs' claims.

Allstate's federal claims are governed by federal law. "When reviewing federal claims, a transferee court in [the Ninth Circuit] is bound only by [the Ninth Circuit's] precedent." *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir.1994). *Accord In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C.Cir.1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676,

---

7. *Washington State Plumbing and Pipefitting Pension Fund Trust v. Countrywide Fin. Corp.*, et al., No. BC 392571 (Cal.Super. Ct. June 12, 2008).

104 L.Ed.2d 113 (1989) (holding that "the law of a transferor forum on a federal question ... does not have stare decisis effect in a transferee forum situated in another circuit"). The Court will therefore apply Ninth Circuit precedent to Allstate's federal claims.

The case was transferred from the Southern District of New York pursuant to 28 U.S.C. § 1404(a). ECF No. 116. The Court will therefore apply the substantive law, including choice-of-law rules, of New York to Allstate's state law claims. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."); *Newton,* 22 F.3d at 1459 (9th Cir.1994) ("Because the case was transferred under 28 U.S.C. § 1404(a) ... we apply the choice-of-law rules of [the transferor forum]"). The parties are in general agreement that New York choice-of-law rules apply to the state law claims, but they disagree on the import of those rules. The disagreements fall into three broad categories: (i) whether New York's choice-of-law rules require the application of California or New York law to the aiding and abetting claims, (ii) whether Delaware or New York law applies to the claims against the Bank of America Defendants, and (iii) whether New York's borrowing statute requires consideration of Illinois' statute of limitations. The Court will address each in turn. The parties are in apparent agreement that New York law applies to the merits of Allstate's fraud and negligent misrepresentation claims.[8]

**A. AIDING AND ABETTING**

 In their supplemental briefs, Mozilo and Sambol argue that California law,

not New York law, applies to the aiding and abetting claims against him. Mozilo Supp. Brief at 4, ECF No. 163; Sambol Supp. Brief at 5, ECF No. 166. When faced with a choice of law question, New York first analyzes whether a true conflict exists. *Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452, 492 (S.D.N.Y.2001). A true conflict of laws does exist in this case. California law makes clear that "[a]n employee cannot aid and abet his or her corporate employer." *Fiol v. Doellstedt,* 50 Cal.App.4th 1318, 1326, 58 Cal.Rptr.2d 308 (2d Dist.1996). *See also, Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 77–79, 53 Cal.Rptr.2d 741 (2d Dist. 1996). Mozilo appears to concede that no such bar exists under New York law. Mozilo Supp. Brief at 4. Because the aiding and abetting claim would clearly be barred under California law, the Court finds that a true conflict of law exists.

 When a true conflict does exist, New York employs an "interest analysis" to apply the law of the jurisdiction "having the greatest interest in the litigation." *Cromer Finance,* 137 F.Supp.2d at 492 (citing *Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir.1998)). "[F]or claims based on fraud, a court's 'paramount' concern is the locus of the fraud, that is, the place where the injury was inflicted, as opposed to the place where the fraudulent act originated. The place in which the injury is deemed to have occurred is usually where the plaintiff is located." *Id.* (citations omitted). *See also, Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993) ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will

---

**8.** As discussed in Section II.A, it is plausible that Illinois law should govern those claims. Under the doctrine of implied consent, the Court will apply New York law to the fraud

and negligent misrepresentation claims for purposes of this motion, without prejudice to a later assertion of Illinois law. *See* Section II.A; note 9, *infra.*

generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."). It is of no moment that Countrywide is situated in California and the conduct which forms the basis for Plaintiffs' claims occurred here. Under New York law, a tort is deemed to occur where the final element, infliction of damage, occurs. In this case, two of the plaintiffs are based in Illinois, one in New York, and one in Florida. Each plaintiff incurred any losses in its state of residence, and so those are the states with the greatest interest in the application of their law. Mozilo and Sambol's argument that California law should apply to the claims against them is therefore unfounded—either New York, Illinois, or Florida law is proper.

 The fact that the Illinois Plaintiffs are based in Illinois and represent the vast majority of the RMBS purchases in the case provides a plausible basis to favor Illinois law over that of New York. However, the parties fully briefed the present motions to dismiss before Judge Hellerstein and no party urged the application of Illinois law. Rather, both sides assumed that New York law would apply (with the exception of Delaware's *de facto* merger law, discussed below) and fully briefed their arguments using New York precedent. Interpreting New York choice of law rules, the Second Circuit has held that, "where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *American Fuel Corp. v. Utah Energy Dev.*

*Co., Inc.*, 122 F.3d 130, 134 (2d Cir.1997). Since the parties assumed that New York law would control the issues before the Court, "implied consent ... is sufficient to establish choice of law." *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (quoting *Tehran–Berkeley Civil & Env't. Eng'rs. & Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989)).[9] The Court will apply New York's substantive law to the aiding and abetting claims.

## B. SUCCESSOR LIABILITY

The Bank of America Defendants argue that Delaware, not New York, law governs the successor liability claims against them. The Court applies the same conflict of law principles that are laid out above.

 Under New York law, a court considers (i) continuity of ownership; (ii) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, (iv) continuity of management, personnel, physical location, assets and general business operation. *Fitzgerald v. Fahnestock & Co., Inc.*, 286 A.D.2d 573, 730 N.Y.S.2d 70, 71 (1st Dep't 2001). By contrast, Delaware law is much more deferential to the legal formalities of a transaction. *See Maine State II*, 2011 WL 1765509, at *3 (collecting cases). Specifically, New York law would apply the *de facto* merger doctrine if all the indicia of a merger are

---

**9.** That the parties have impliedly consented to the application of New York law for purposes of this motion to dismiss does not preclude them from later arguing that some other law applies to any other issue in the case. *General Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1505 (9th Cir.1995) (party permitted to raise a choice of law issue before summary judgment despite having referred to contrary law in its previous briefing). *See*

*also Tahoe–Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 788 (9th Cir.2000) (assertion of a defense pursuant to an incorrect choice of law does not automatically bar the later assertion of the same defense under the proper law). *C.f. C.N.R. Atkin v. Smith*, 137 F.3d 1169, 1170–71 (9th Cir.1998) (choice of law issue waived when not raised until appeal).

present, even without an allegation that the corporation intended to commit fraud or otherwise harm the creditors. *Fitzgerald,* 730 N.Y.S.2d, at 71. Delaware law would not apply the doctrine without such an allegation. *Maine State II,* 2011 WL 1765509 at *3–4. The Court therefore concludes that a true conflict exists between New York and Delaware law.

■ The Court next addresses whether Delaware or New York has the greater interest in the application of its law. Choice of law questions must be decided on an issue-by-issue basis. *Cooney,* 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277; Restatement (Second) Conflict of Laws § 145, cmt. d. The question, therefore, is which state has the greater interest in the application of its *de facto* merger law, not which state has the greater interest in the case generally. On one hand, the *de facto* merger doctrine exists to protect creditors, and so the plaintiffs' state of residence has a plausible interest in applying its law. On the other hand, the question of whether a *de facto* merger has been effected goes squarely to the structure and internal organization of a corporation. The internal affairs doctrine, expressed in the Restatement, is clear that the state of incorporation's law should govern matters that are internal to the corporation. Restatement (Second) Conflict of Laws § 302. Even corporate functions which implicate the rights of creditors, such as mergers and reorganizations, fall within the doctrine. *Id.,* cmt. a, e.

■ New York has not explicitly adopted § 302, but its result is a logical extension of the interest analysis required under New York law. Corporations are creatures of the state, and a key purpose of the corporate form is to structure and channel liability. This is part of the reason that corporations pick one state over another to incorporate in, and it follows that the law of the state of incorporation should govern such a core attribute. *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras,* No. 98 Civ. 3099(THK), 2005 WL 289575, at *5 (S.D.N.Y. Feb. 4, 2005) ("The question of successor liability in this proceeding ... should be governed by the law of ... the jurisdiction of the relevant entities' incorporation.").

A number of courts have applied § 302 in the closely analogous context of corporate veil-piercing. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.") (quoting *Soviet Pan Am Travel Effort v. Travel Comm., Inc.,* 756 F.Supp. 126, 131 (S.D.N.Y.1991)); *McCall v. Chesapeake Energy Corp.,* No. 10 Civ. 8897(DLC), 817 F.Supp.2d at 314 n. 8, 2011 WL 4056310, at *4, n. 8 (S.D.N.Y. Sep. 13, 2011) (Law of the state of incorporation applicable to veil piercing issue.); *Sykes v. Mel Harris & Assocs., LLC,* 757 F.Supp.2d 413, 430 (S.D.N.Y. Dec. 29, 2010) ("Generally, the veil-piercing analysis is governed by the law of the place of incorporation.").[10]

---

**10.** Allstate argues that veil piercing is fundamentally different from successor liability via *de facto* merger, but it provides no explanation of either how the concepts are different or why they require a different result in this case. Opp. at n. 107. Both concern whether a court should disregard the corporate form and allow a plaintiff to proceed against a related party. Some jurisdictions regard veil-

piercing as a contractual issue, *see John T. Callahan & Sons, Inc. v. Dykeman Elec. Co., Inc.,* 266 F.Supp.2d 208, 230 (D.Mass.2003), but (i) New York does not, and (ii) that rule would mean that one would be more likely to apply the law of the state of incorporation to a *de facto* merger claim than a veil piercing claim, not less. For instance, in *John T.*

■ The comments to § 302 match this logic, noting that the internal affairs doctrine provides a corporation with the benefits of certainty, predictability, and uniformity of result. As Bank of America notes, applying Delaware law to *de facto* merger questions will allow Delaware to provide its corporations with one bright-line rule rather than subjecting them to the vagaries of multiple states' rules.

The Court takes this opportunity to briefly address several additional points. First, Allstate argues that § 301 of the Restatement applies rather than § 302. Opp. at 124–25. To the extent that the Restatement applies at all, the Bank of America Defendants are correct that it would be § 302, not § 301. Section 301 states that, "[t]he rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties." Restatement (Second) Conflict of Laws § 301. Bank of America is not alleged to have committed any primary violation. The "corporate act" which potentially gave rise to its liability was the acquisition of Countrywide via forward triangular merger. And, an individual cannot engage in such a transaction.

This is enough to end the inquiry, but the Court notes that § 301 would not apply even were the Court to assume that the "corporate acts" are those giving rise to primary liability (i.e. Countrywide's purportedly false and misleading statements). If the "corporate act" is Countrywide's sale of RMBS and associated statements, then Allstate is not a third party under any standard meaning of the term. A "third person" or "third party" is "[a] person who is not a party to a lawsuit, agreement, or other transaction but who is usually somehow implicated." BLACK'S LAW DICTIONARY 1518 (8th ed.1999). Allstate is a sophisticated investor and one of the largest insurance companies in the world. Allstate voluntarily entered into a series of commercial transactions with Countrywide; this makes it a party to the securities purchases, not a third party.

Second, Allstate has cited several cases which it claims support its position that New York's *de facto* merger law should apply. Opp. at 125–126. Specifically, Allstate relies upon *Chrysler v. Ford Motor Co.*, 972 F.Supp. 1097, 1102 (E.D.Mich. 1997), *Korzetz v. Amsted Indus., Inc.*, 472 F.Supp. 136, 142 (E.D.Mich.1979) (*declined to follow on other grounds by Johnson v. Ventra Group*, 191 F.3d 732, 747 (6th Cir. 1999)), and *Lopata v. Bemis Co.*, 406 F.Supp. 521, 524 (E.D.Pa.1975) *aff'd*, 546 F.2d 417 (3d Cir.1976). *Korzetz* and *Lopata* are plainly inapplicable. The *Korzetz* court was required to use Michigan choice of law rules. *Korzetz*, 472 F.Supp. at 142. Michigan follows the rule of *lex loci delicti*, not the more common interests analysis or Restatement rule. *Id.* Similarly, the *Lopata* court applied Pennsylvania choice of law rules. *Lopata*, 406 F.Supp. at 522. That court applied a hybrid contacts and interest analysis, and made no reference to the internal affairs doctrine. *Id. Chrysler* is more closely applicable, as that court explicitly held that § 301 applies rather than § 302. *Chrysler*, 972 F.Supp. at 1102. As the Court made clear in *Maine State II*, "[t]he particular issue in this case is successor liability by virtue of *de facto* merger." *Maine State II*, 2011 WL 1765509, at \*4. To the extent that *Chrysler* held that the "issue" was the underlying tortious conduct rather than the transaction which (potentially) gave rise to succes-

---

*Callahan & Sons*, the parties fought over choice of law for the veil-piercing issue, but apparently stipulated that the state of incor-

poration's law would apply to the *de facto* merger issues. *Id.* at 223.

sor liability, the Court believes that *Chrysler* was wrongly decided.[11] The better rule is the one articulated in *Maine State II*, that a court should look to the transaction giving rise to potential successor liability, not the underlying tortious act. The Court therefore holds that Delaware's law of *de facto* merger applies to the question of whether the Bank of America Defendants are liable as Countrywide's successors in interest.

## C. BORROWING STATUTE

In Court-directed supplemental briefs, Defendants asserted that New York's borrowing statute requires the application of Illinois' statute of limitations to the Illinois Plaintiffs' claims, and therefore dismissal of many of the common law claims. This argument had not been raised in the pretransfer briefing before Judge Hellerstein, and Allstate claims that it is therefore waived. Allstate Opp. to Defs' New Motions re: Timeliness of Common–Law Claims ("Supp. Opp.") at 2–3. The parties agree that, if not waived, New York's borrowing statute applies. They disagree strenuously on the implications of that statute. The sections that follow address whether the argument has been waived and, if not, which Illinois limitations periods apply. The impact of those decisions is addressed in Sections IV.A.4–5.

### 1. Defendants Have Not Waived Their Borrowing Statute Arguments

■ Subject to several exceptions not applicable here, the statute of limitations is an affirmative defense which is waived if not raised at the pleadings stage. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008).[12] Defendants have not yet filed answers, and so there is no question of permanent waiver. Rather, Allstate argues that, having failed to question the timeliness of the state law claims in its Rule 12(b)(6) motion, Defendants are foreclosed by Rule 12(g) from doing so in supplemental briefs.

■ Allstate is correct that Defendants' timeliness defense could and should have been raised in their initial motions before Judge Hellerstein. It was not, but Defendants recognized their omission before they were required to file answers. They are therefore entitled to raise the issue in those answers, and to move for a judgment on the pleadings any time thereafter. Fed. R. Civ. Proc. 12(h)(2)(B) (Dismissal under Rule 12(b)(6) may be requested through a Rule 12(c) motion after the pleadings are closed.); *Yumul v. Smart Balance, Inc.*, No. CV 10–00927 MMM (AJWx), 2011 WL 1045555, at *4–5

---

**11.** The Court also notes that *Chrysler, Korzetz,* and *Lopata* all involve torts against third parties, whereas this case involves an alleged tort against a commercial counterparty. *Chrysler* and several of the cases following it involve mass toxic torts and CERCLA liability. It may well be that a state has a stronger interest in applying its law to disregard the corporate form when the plaintiff is a third party who had no business relationship with the defendant. As that is not the case here, the Court has no need to decide the issue.

**12.** Several Courts of Appeals, though not the Ninth Circuit, have held that a district court must look to state law to determine whether the statutes of limitations and repose are affir-

mative defenses which must be pleaded under Rule 8(c) or defenses to the substantive elements of a claim (and therefore not waivable). *See, e.g., Roskam Baking Co., Inc. v. Lanham Mach. Co., Inc.*, 288 F.3d 895, 901 (6th Cir. 2002); *Troxler v. Owens–Illinois, Inc.*, 717 F.2d 530, 532 (11th Cir.1983). The Court need not address this question because, even if the statutes of repose or limitations are waivable, waiver would not occur until *at least* the Defendants' answer. C.P.L.R. § 3018; *Lewiarz v. Travco Ins. Co.*, 82 A.D.3d 1464, 1465–66, 919 N.Y.S.2d 227 (3d Dept. 2011) (waiver of statute of limitations argument may be cured by asserting the defense at summary judgment).

(C.D.Cal. Mar. 14, 2011) (affirmative defense not waived if omitted from motion to dismiss but later included in answer).

Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. *See Yumul,* 2011 WL 1045555, at *4. If the Court were to evade the merits of Defendants' timeliness defenses here, Defendants would be required to file answers within 14 days of this Order. They would presumably assert the statutes of limitations and repose in those answers. Defendants would then file Rule 12(c) motions, the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months. That is not the intended effect of Rule 12(g), and the result would be in contradiction of Rule 1's mandate that the Rules, "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Proc. 1. Rather than further delay this case, the Court invokes the "substantial amount of case law which provides that successive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved." *Doe v. White,* No. 08–1287, 2010 WL 323510, at *2 (C.D.Ill. Jan. 20, 2010) (collecting cases). *See also Yumul,* 2011 WL 1045555, at *4–5 ("Because [Defendant] is entitled to raise the defense any time prior to or during trial, moreover, it would promote efficient resolution of the case to consider it in the context of the currently pending motion."); *Coleman v. Pension Ben. Guar. Corp.,* 196 F.R.D. 193, 196–97 (D.D.C.2000) (Allowing argument via successive motion "[i]n the absence of any apparent bad faith, and in the interest of promoting the efficient resolution of this case."); *In re Westinghouse Securities Litigation,* No. Civ.A. 91–354, 1998 WL 119554, *6 (W.D.Pa. Mar. 12, 1998) ("[G]iv-

en the lack of waiver and the fact that defendant's defenses [ ] will still require adjudication in any event, many courts permit the defense of failure to state a claim upon which relief can be granted to be asserted in a subsequent motion as a means of preventing unnecessary delay in the proceedings.").

Defendants' common law statute of limitations arguments have not been waived. Despite the winding path to this point, both sides have now had a chance to fully brief those issues. Addressing the arguments now will prejudice neither side and will promote the efficient and just resolution of this case.

### 2. The ISL's Three–Year Limitations Period Applies to the Illinois Plaintiffs' Claims

The parties agree that New York law applies to the common law claims. Countrywide Defs' Response to Supp. Opp. at 6; Supp. Opp. at 4. New York has a borrowing statute, C.P.L.R. § 202, which provides that when a nonresident sues on a cause of action that accrued outside the state, the action must be timely under both New York and the laws of the place where the cause of action accrued. *Id.* A cause of action "accrues where the injury is sustained rather than where the defendant committed the wrongful acts." *Gordon & Co. v. Ross,* 63 F.Supp.2d 405, 408 (S.D.N.Y.1999). "When an injury is purely economic, the place of injury for purposes of the borrowing statute is where the economic impact of defendant's conduct is felt, which is usually the plaintiff's place of residence." *Id.*

One plaintiff is located in New York, meaning that the borrowing statute is not implicated. Another is located in Florida. Florida has a four-year statute of limitations for fraud, meaning that the Florida Plaintiff's suit is timely under either state's law. The remaining two plaintiffs,

and the ones who purchased the vast majority of the RMBS in the case, reside in Illinois. The parties agree that an Illinois statute of limitations should apply, though they disagree as to whether it should be the three-year period in the Illinois Securities Law ("ISL"), or the five-year period for fraud. Supp. Opp. at 4–8; Countrywide Defs' Response to Supp. Opp. at 6–10.

The ISL states that, "[n]o action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after three years from the date of sale...." 815 I.L.C.S. 5/13(D) ("Section 13(D)").[13] Illinois courts have interpreted the "any of the matters for which relief is granted" language to mean that the three-year period applies to common law fraud claims arising out of the purchase of securities. *Tregenza v. Lehman Bros., Inc.,* 287 Ill.App.3d 108, 110, 222 Ill.Dec. 607, 678 N.E.2d 14 (1st Dist.1997). Allstate claims that (i) an ISL suit would have been barred *in this case* because New York substantive law governs, (ii) that therefore "relief" could not be granted under the ISL, and (iii) that therefore the five-year statute of limitations for fraud applies rather than the shorter three-year period. Supp. Opp. at 5–8. The Court is skeptical about the first proposition,[14] but will accept it for the sake of argument. Even if Allstate could not bring an ISL claim in this case, the ISL law may still provide the statute of limitations. To hold otherwise would render the "because of any of the matters for which relief is granted" language in Section 13(D) meaningless.

The Court need not look past the plain language of the statute to conclude that the "matters for which relief is granted" refers to the conduct giving rise to a suit rather than the procedural question of whether an ISL suit is allowed in a particular case. Section 13(D) provides a three-year limitations period from the date of sale. Consider an Illinois case alleging fraud in the sale of a security, filed four years after the security sale. Section 13(D) would bar such a suit. *See Tregenza,* 287 Ill.App.3d, at 109–10, 222 Ill.Dec. 607, 678 N.E.2d 14. Allstate's proposed construction would mean that the ISL does not "grant relief" for such a suit because it is barred by Section 13(D). This in turn would mean that Section 13(D) does not apply in the first place. This type of tortured and recursive reasoning runs contrary to the holding of *Tregenza* and would strip Section 13(D) of its plain meaning.

 The more logical reading of Section 13(D), the one that the *Tregenza* court implicitly endorsed and which the Court adopts here, is the one that holds that Section 13(D)'s three-year statute of limitations applies when the conduct giving rise to the fraud claim is conduct that is also covered by the ISL. Allstate alleges that Countrywide misrepresented the quality of the loans underlying its RMBS. This is conduct that, setting aside the procedural questions regarding where and when the suit was brought, is squarely governed by the ISL. The ISL therefore, and not the five-year period for common law fraud, provides the relevant statute of limitations.

---

**13.** Section 13(D)(1)-(2) includes an exception under which the three-year clock does not begin to run until the plaintiff knew or through the exercise of reasonable diligence should have known of the violation. The Court will discuss this exception in Section IV.A.5 below.

**14.** As noted in Section II.A, above, there is reason to think that Illinois, rather than New York, law should apply to the claims by the Illinois Plaintiffs. Given that both sides have consented to New York law for purposes of this motion, the Court will apply New York law.

*3. The ISL's Five–Year Repose Period Applies to the Illinois Plaintiffs' Claims*

 The second half of Section 13(D) provides that no suit may be brought more than five years from the date of sale. Defendants claim that this acts as an absolute bar to claims on behalf of any purchases before December 27, 2005. Countrywide Defs' Supp. Brief at n. 8. Allstate counters that this portion of Section 13(D) is a statute of repose and therefore is not borrowed under C.P.L.R. § 202. Allstate cites *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 56, 687 N.Y.S.2d 604, 710 N.E.2d 250 (1999) for the proposition that New York does not borrow substantive law, including statutes of repose. Supp. Opp. at 8–9. *Tanges* held that a statute of repose is substantive, rather than procedural, but that holding is entirely unrelated to the question of whether C.P.L.R. § 202 extends to statutes of repose.[15] C.P.L.R. § 202 is a relatively straightforward statute which imports "the time limited by the laws of . . . the place without the state where the cause of action accrued."[16] A statute of repose is a law which limits the time in which a plaintiff may bring an action. The Court therefore finds, as a matter of pure statutory construction, that C.P.L.R. § 202 extends to statutes of repose as well as statutes of

limitations. *See also Ledwith v. Sears Roebuck and Co., Inc.*, 231 A.D.2d 17, 23–24, 660 N.Y.S.2d 402 (1st Dept.1997) ("By its own terms, C.P.L.R. 202's borrowing provision is not confined to the statute of limitations but embraces all the laws that serve to limit the time within which an action may be brought."); *Barnett v. Johnson*, 839 F.Supp. 236, 239 (S.D.N.Y.1993) ("The plain language of C.P.L.R. § 202 requires a New York court to borrow the Texas statute of repose.").

*4. The ISL's Limitations and Repose Periods Apply to The Illinois Plaintiffs' Negligent Misrepresentation Claims*

The ISL's statutes of repose and limitations apply to Allstate's negligent misrepresentation claims as well as its fraud claims. *See Tregenza*, 287 Ill.App.3d, at 109, 222 Ill.Dec. 607, 678 N.E.2d 14 (Negligence and fraud claims barred by ISL's statute of limitations because both causes of action are "reliant 'upon . . . matters for which relief is granted'" by the ISL.).

### III. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington En-*

**15.** In *Tanges*, the Court of Appeals faced the threshold question of whether the plaintiff could invoke the borrowing statute's "resident exception." *Tanges*, 93 N.Y.2d at 53–54, 687 N.Y.S.2d 604, 710 N.E.2d 250. That question required the court to address whether a cause of action had ever "accrued" in the first place. The Court of Appeals found that the plaintiff was not entitled to the "resident exception" because, under Connecticut substantive law (which included the statute of repose), no action had accrued in the first place. *Id.* This case has nothing to do with the resident exception or the question of whether a statute of repose prevented the accrual of a cause of action. Allstate's reli-

ance on *Tanges* is misguided at best and borders on a violation of Rule 11(b). The Court will not tolerate further attempts to stretch the law or misrepresent the holding of a case.

**16.** As discussed above, the question of where (and whether) the cause of action "accrued" is governed by New York law because of the parties' implied consent. Therefore, the Illinois statute of repose cannot prevent the "accrual" of an action the way it did in *Tanges*. If the Court were to apply Illinois substantive law, the statute of repose would simply bar claims on RMBS purchased before December 27, 2005 directly rather than through the application of New York's borrowing statute.

*ergy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

## IV. DISCUSSION

Having decided the choice of law issues, the Court turns to the substantive issues raised by the parties. As discussed below, Allstate's federal claims are time-barred and are **DISMISSED WITH PREJUDICE.** The Illinois Plaintiffs' state law claims on Certificates that they purchased prior to December 27, 2005 are time-barred and are **DISMISSED WITH PREJUDICE.** The remainder of Allstate's common law fraud claims are adequately pleaded and may proceed. Allstate's aiding and abetting claims and negligent misrepresentation claims are inadequately pleaded and are **DISMISSED WITHOUT PREJUDICE.**

### A. STATUTES OF LIMITATIONS AND REPOSE

*1. The Section 11 and 12(a)(2) Claims Are Time–Barred.*

 The topic of *American Pipe* tolling has been considered in other Countrywide cases before the Court. The Court will not belabor the issue, but rather refers the parties to its rulings in the *Maine State* and *Stichting* cases. *Maine State I,* 722 F.Supp.2d at 1166–67; *Maine State III,* 2011 WL 4389689, at *6; *Stichting Pensionenfonds ABP v. Countrywide Fin. Corp.,* No. 10–cv–07275 MRP (MANx), 802 F.Supp.2d 1125, 1130–31, 2011 WL 3558173, at *2 (C.D.Cal. Aug. 9, 2011) (*"Stichting"*). To briefly summarize, Allstate asserts claims for 25 different Offerings. Each of the offerings was issued and sold more than three years before the commencement of this suit. Allstate's §§ 11 and 12(a)(2) claims are therefore barred by the statute of repose unless Plaintiff properly asserts that its claims were tolled. 15 U.S.C. § 77m. Plaintiff asserts that its claims were tolled with respect to 22 of the 25 offerings because they were "part of" the timely-filed *Luther* class actions. Opp. at 99. Plaintiffs argue that they are therefore entitled to tolling under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). However, this Court has previously held that an offering was not a "part of" the *Luther* class actions for purposes of *American Pipe* tolling unless one of the named plaintiffs in those actions actually had standing to assert a claim on behalf of purchasers of that offering. *Maine State I,* 722 F.Supp.2d at 1166–67; *Maine State III,* 2011 WL 4389689, at *6; *Stichting,* 802 F.Supp.2d at 1130–31, 2011 WL 3558173, at *2. To have had standing to sue on behalf of purchasers of an offering, the *Luther* named plaintiff must have purchased from the same offering and tranche. *Maine State III,* 2011 WL 4389689, at *6; *Stichting,* 802 F.Supp.2d at 1130–31, 2011 WL 3558173, at *2. Those rulings apply with equal force here.[17] None of the *Luther* named plaintiffs purchased any of the Certificates that Allstate

---

17. The parties have not briefed the question of whether *Maine State I* and *Maine State III* have collateral estoppel effect here by virtue of Allstate's supposed presence in the *Maine State* class. The fact that those decisions

is now claiming losses on. Allstate is therefore not entitled to *American Pipe* tolling with respect to any of the 25 offerings. With no basis for tolling, Allstate's claims are time-barred. The Court therefore **GRANTS** Defendants' motions to dismiss Counts VI and VII. Dismissal is **WITH PREJUDICE** as to **ALL DEFENDANTS.**

2. *The Section 10(b) Claims Are Time–Barred*

 Allstate filed its complaint on December 27, 2010. ECF No. 1. A § 10(b) claim must be filed within two years of the date Plaintiff either knew, or through the exercise of reasonable diligence should have known, "the facts constituting the violation." *Merck & Co., Inc. v. Reynolds,* — U.S. ——, 130 S.Ct. 1784, 1798, 176 L.Ed.2d 582 (2010). These facts include facts supporting an allegation of scienter. *Id.* This Court and others have interpreted the *Merck* standard as requiring that a plaintiff either knew (or through the exercise of reasonable diligence have known) enough facts to surmount a motion to dismiss. *Stichting,* 802 F.Supp.2d at 1134–38, 2011 WL 3558173, at *6–9. *See also City of Pontiac General Employees' Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169, 174 (2d Cir.2011). This Court has already held that a reasonable purchaser of Countrywide-originated RMBS, exercising reasonable diligence, "should have discovered facts sufficient to state every element of its claim at least prior to February 14, 2009." *Stichting,* 802 F.Supp.2d at 1139, 2011 WL 3558173, at *11. Allstate attempts to avoid a similar result by emphasizing several points. First, Allstate emphasizes that the public press reports and prior

complaints that Defendants cite (and which the Court relied upon in *Stichting* ) do not demonstrate scienter with respect to the specific Certificates purchased by Allstate. Opp. at 90. Second, Allstate emphasizes that its complaint is based (in part) on a detailed loan-level analysis which was not available until 2010. Opp. at 91. Allstate raised a third point at oral argument, urging that its pleading of actual damages based on market downgrades meant that it could not have been aware of its injury on December 27, 2008. None of Allstate's arguments are persuasive.

Allstate's first argument, that nothing in the public record as of December 27, 2008 indicated scienter with respect to the particular loan pools that Allstate purchased, is frivolous and contradicted by its pleadings. In the shareholder class action and elsewhere, the Court has held that a sufficient inference of scienter exists to support the allegation that Countrywide knew that it had abandoned its underwriting standards. *In re Countrywide Fin. Corp. Sec. Litig.,* 588 F.Supp.2d 1132, 1185–92 (C.D.Cal.2008). That decision issued several weeks before the § 10(b) threshold date of December 27, 2008. The phrase that the Court used in *In re Countrywide Fin. Corp. Sec. Litig.,* and which has been repeated by every Countrywide plaintiff since, is a "unified course of abandoning sound underwriting practices." *Id.* at 1163. The Court has not addressed the specific question of whether that course of conduct is sufficient to maintain a § 10(b) action on behalf of purchasers of Countrywide-issued RMBS in addition to purchasers of Countrywide common stock and notes.[18] It is an interesting, if irrelevant, question.[19]

---

were based on standing renders this an immensely difficult question. Because the issues are identical to *Maine State I* and *Maine State III,* the Court declines to address the collateral estoppel issue and instead merely adopts its reasoning from the *Maine State* case.

**18.** The Court's hesitancy on whether the same claims of systemic abandonment that supported the shareholders class action would be sufficient to support an RMBS § 10(b) suit may seem to be at odds with its holding in *Stichting. See Stichting,* 802 F.Supp.2d at

Nothing in the public record or put before the Court since December 2008 permits Allstate to go beyond the "unified course of abandoning sound underwriting practices" or to tie that course of action to the particular Certificates that it purchased. Allstate's own Opposition acknowledges that its claim is reliant on bootstrapping representations of the quality of specific loan pools to knowledge that *all* loan pools were riskier than advertised. Opp. at 12 ("[A]llegations showing *systemic* problems during the relevant period, by definition, support a finding that *these Certificates* were misrepresented."). Allstate is faced here with a Hobson's choice. If it is correct in its big-picture argument that systemic abandonment is sufficient to state an RMBS § 10(b) claim, then it was on notice of that claim before December 27, 2008. If it is wrong, as it is forced to argue for purposes of this motion, then its claim is insufficient. Allstate proposes to walk a razor-thin line whereby systemic problems were insufficient to state a case in late 2008 but somehow sufficient in 2010. Nothing in the record supports its argument.

Second, the Complaint frequently references a study of 19,000 individual loans which purportedly demonstrates that, at the time they were sold, the RMBS purchased by Allstate were worth substantially less than the amount that Allstate paid for them. ¶ 112; Opp. at 91. Allstate argues that it could not adequately link Defendants' wrongdoing to the specific offerings that Allstate purchased until this "loan-level" analysis was completed in 2010. *Id.* This argument confuses the term "fact" with the terms "analysis" or "opinion." A "fact" is "something that actually exists; an aspect of reality." BLACK'S LAW DICTIONARY 628 (8th ed.1999). To analyze, by contrast, is to "separate into parts or basic principles so as to determine the nature of the whole; examine methodically." AMERICAN HERITAGE DICTIONARY 1248 (2d College Ed.1976). Put another way, analysis is not a fact, it is a process whereby one evaluates, considers, and synthesizes facts to reach a conclusion. The conclusion itself may be a fact (if unassailable and therefore "an aspect of reality"),[20] or it may be an opinion (if the conclusion relies upon a mixture of factual analysis and any element of judgment, experience, mathematical modeling, expectations regarding future performance, or other non-quantifiable factors).[21]

For Allstate's argument to delay the triggering of the statute of limitations, its loan-level analysis would have to have (i) generated new facts which had not been previously known, (ii) been essential to surviving a motion to dismiss, and (iii) not been possible until at least December 27,

---

1134–40, 2011 WL 3558173, at *6–11 (holding that plaintiff was on notice of its § 10(b) claim against Countrywide by at least February 14, 2009). The Court does not perceive any such discrepancy. If the Court implied that Stichting's suit would have been successful but for the statute of limitations, it did not intend to do so. The Court meant only what it means here; that Stichting's claims were predicated on the same factual allegations as the shareholder's class action. To the extent that those allegations are sufficient to state a claim, Stichting should have been aware of them before February 14, 2009.

**19.** This question is related to the issue of whether, for purposes of common law fraud, the voluminous disclosures contained in the Offering Documents render any misstatements non-false, non-material, or not reasonably relied upon. The Court addresses these issues in Sections IV.B.1 and IV.B.4 below.

**20.** For example, a conclusion that some percentage of homes in a particular pool of loans are owner-occupied.

**21.** For example, a conclusion that the value of a piece of collateral was overstated.

2008. The loan-level analysis fails all three requirements. Most of the conclusions from Allstate's analysis appear to be opinions in that they rely upon complex and unverifiable mathematical models. To the extent that they could be characterized as factual, it would be by recasting them as factual descriptions of the inputs and outputs of an analysis (i.e., "using these five factors as inputs to the AVM valuation model reveals that 8% of loans had an LTV ratio above 100%"). To the extent that any of the loan-level analysis' results are factual, those facts must be considered summaries of other, previously disclosed facts. Information regarding each of the inputs for any such analysis, for each loan that underlay the RMBS that Allstate purchased, was available in the Prospectus Supplements that Allstate claims to have relied upon. Opp. at 24. Allstate could have analyzed that information whenever it wished; the fact that it declined to do so does not toll the statute of limitations.

The Court finds no difference between a series of underlying facts and a summary of those facts. For all intents and purposes, a summary statistic is available (even if not compiled) on the date that the underlying facts are available. Second, even if these summary statistics could somehow constitute new facts subject to independent discovery, the Court finds that a reasonable investor exercising reasonable diligence would have compiled them prior to December 27, 2008. If, as Allstate claims, these statistics were essential to stating a claim, a reasonable investor could and should have engaged someone to copy and paste the Prospectus Summaries into a spreadsheet and analyze the numbers well before 2008.

Finally, Allstate argued that, unlike Stichting, it pleaded that it incurred actual damages based on ratings downgrades and other events. As such, Allstate argues that it cannot have been aware of its actual damages until at least the date that its RMBS were downgraded. A § 10(b) claim requires the plaintiff to show that a loss occurred when the public became aware of a misrepresentation. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir.2010) (Loss must be traceable to the public discovery of the misrepresentation.). The Court does not understand Allstate to be arguing that there was any curative disclosure when the Certificates were downgraded in 2009 and 2010. To the extent that Allstate is so-arguing, the Complaint would present additional problems too numerous to address here. Under the Ninth Circuit's loss causation law, any damages accrued when the truth regarding Countrywide's underwriting practices came to light. *Id.* The Complaint does not provide specific dates of alleged curative disclosures, but they would have been well before the December 27, 2008 cutoff date.

For the reasons discussed above, the Court **GRANTS** Defendants' motions to dismiss Count I. Dismissal is **WITH PREJUDICE** as to **ALL DEFENDANTS.**

### 3. The Federal Control Person Claims Are Time–Barred

In addition to its primary liability claims under the Securities Act and the Exchange Act, Allstate has asserted federal control person claims against CFC, CHL, CCM, Mozilo, and Sambol. ¶¶ 399; 457. These claims arise under § 15 of the Securities Act and § 20(a) of the Exchange Act. *Id.* Both §§ 15 and 20(a) are control person liability statutes which require a properly pleaded predicate violation. *Stichting*, 802 F.Supp.2d at 1131–32, 1139–40, 2011 WL 3558173, at *3, *11. The Court has dismissed all possible predicate violations as time-barred, and so the Court hereby **GRANTS** Defendants' motions to dismiss

Counts II and VIII. Dismissal is **WITH PREJUDICE** as to **ALL DEFENDANTS.**

### 4. The Statute of Repose Bars Some of the Illinois Plaintiffs' Fraud and Negligent Misrepresentation Claims

New York's borrowing statute requires the Court to apply the time limitations specified in the ISL to claims by the Illinois Plaintiffs. *See* Section II.C.2–3 above. This includes a five-year statute of repose from the date of sale. 815 I.L.C.S. 5/13(D). Allstate filed its complaint on December 27, 2010. The statute of repose therefore prohibits claims for any RMBS that the Illinois Plaintiffs purchased before December 27, 2005. The Court hereby **GRANTS** Defendants' motions to dismiss Counts III, IV, and V for all RMBS that the Illinois Plaintiffs purchased before December 27, 2005. Dismissal is **WITH PREJUDICE** as to **ALL DEFENDANTS.**

### 5. The Statute of Limitations Does Not Bar the Remainder of the Illinois Plaintiffs' Fraud Claims

The ISL includes a three-year statute of limitations which begins to run when the plaintiff had actual knowledge of the violation, or had notice of facts which, in the exercise of reasonable diligence, would lead to actual knowledge of the violation. 815 ILCS 5/13(D). This statute of limitations applies to Allstate's fraud, aiding and abetting, and negligent misrepresentation claims. The Court recently held, under California's very lenient inquiry notice standard, that an RMBS plaintiff had notice of potential claims against Countrywide by February 14, 2008. *Stichting*, 802 F.Supp.2d at 1140–41, 2011 WL 3558173, at *12. *Stichting* was a difficult case, and its outcome was determined largely by the fact that California requires only that a party be on notice that an injury was "caused by wrongdoing" before the statute begins to run. *Id.*

The Illinois statute appears to be very close to the California inquiry notice standard. Unlike a federal § 10(b) suit, Illinois does not require discovery of the "facts constituting the violation," but rather notice of facts that would "lead to actual knowledge" when reasonable diligence was applied. 815 ILCS 5/13(D)(2); *Merck & Co., Inc. v. Reynolds*, — U.S. —, 130 S.Ct. 1784, 1798, 176 L.Ed.2d 582 (2010) (actual or constructive knowledge of each of the facts constituting the violation required in § 10(b) case). The Court has not found any Illinois cases that illuminate the statute, and so the Court will give Section 13(D) its plain meaning.[22] If facts sufficient to support a claim were public and/or discoverable by Allstate, then the clock began to run when Allstate had notice of facts that should have triggered an investigation into its Countrywide-issued RMBS. "Reasonable diligence" modifies the half of Section 13(D)(2) that relates to

---

**22.** The parties cite two federal cases which reached inconsistent results using questionable reasoning. Neither assists in determining how an Illinois court would rule on this question. In *Grumhaus v. Comerica Secs., Inc*, No. 99–cv–1776, 2003 WL 21504185, at *3 (N.D.Ill. June 30, 2003), the court concluded that something approaching California's notice inquiry standard applied. *Id.* (Party had notice when it knew of "suspicious activity so that a reasonable person would investigate, even if he was not aware of the full extent of the injury."). However, *Grumhaus* reached this conclusion by adopting the standard for common law fraud without analyzing any potential differences between that standard and Section .13(D). In *Baron v. Chrans*, No. 05–3240, 2008 WL 2796948, at *21 (C.D.Ill. July 21, 2008), a different court found that a party was not on notice until the party "learned, or should have learned, both that the representations were untrue and that the misrepresentations were knowingly false." *Id.* That court considered state and federal claims together, and appears to have merely applied the federal standard to the state cause of action without analysis or justification.

"actual knowledge," but not the half that refers to "notice" of facts that would trigger an investigation. The Court understands this to require that Allstate must have had actual, not constructive, notice of facts that should have triggered an investigation.

Countrywide took a charge against earnings in July of 2007. That charge was directly related to the quality of the loans Countrywide was underwriting. Numerous complaints alleging abandonment of underwriting standards followed, as did further charges against earnings. *See Stichting,* 802 F.Supp.2d at 1138–39, 2011 WL 3558173, at *10. In *Stichting,* the Court found that these facts were enough to trigger inquiry notice under California law. This case is different from Stichting in two critical ways. First, the period between December 27, 2007 and February 14, 2008 was an important time in the Countrywide saga. Bank of America announced its acquisition of Countrywide on January 11, 2008. That acquisition was for a substantial discount from book price and may itself have served as a warning regarding Countrywide's core business operations. At the same time that Bank of America was acquiring Countrywide, Countrywide continued to be covered in the press, the *New York City Employees Retirement System* plaintiffs filed their complaint, and various Countrywide suits were consolidated before this Court. *New York City Emp. Ret. Sys. v. Countrywide Fin. Corp.,* No. 08–CV–00492–ODW (C.D.Cal.).

█ Second, and more importantly, the Illinois standard requires both (i) actual knowledge of facts that should have triggered an investigation and (ii) that such an investigation would have unearthed actual knowledge of a violation. It is possible, even probable, that Defendants will be able to meet both tests and show that the Illinois Plaintiffs' claims are time-barred. Nevertheless, both tests require fact-spe-

cific inquiries that render this issue more appropriate for summary judgment. The first will require Defendants to establish what Allstate knew and when it knew it. The second inquiry will require Defendants to show that a reasonable investigation would have revealed a violation of New York law. That question is factual and intimately tied up with the (also fact-intensive) question of underlying liability. It is therefore better addressed at the summary judgment stage.

Accordingly, the Court **DENIES** Defendants' motions to dismiss Counts III, IV, and V based on the statute of limitations.

## B. STATE LAW FRAUD CLAIMS

The Court has dismissed Allstate's federal claims as untimely, and therefore declines to address the merits of any but the state law claims. The Court declines to dismiss the case for lack of subject matter jurisdiction under 28 U.S.C. § 1367(c). Allstate has asserted claims for common law fraud, aiding and abetting fraud, and negligent misrepresentation. For purposes of this motion the Court will apply New York law. *See* Section II.A, above.

█ Allstate claims that CFC, CHL, CSC, the Depositor Defendants, and the Bank of America Defendants are liable to it for common law fraud. The Bank of America Defendants are addressed separately in Section IV.E. Under New York law, the elements of a fraud claim are: (i) a material misrepresentation of a fact, (ii) knowledge of its falsity, (iii) an intent to induce reliance, (iv) justifiable reliance by the plaintiff, and (v) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009). The Court applies federal procedural rules, including (where appropriate) the heightened pleading standard of Rule 9(b). *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1104 (9th Cir. 2003) ("It is established law, in this circuit

and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").

The First Department of the New York Supreme Court's Appellate Division recently held that a very similar complaint adequately pleaded common law fraud against Countrywide. *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 928 N.Y.S.2d 229 (1st Dept.2011). This Court is not technically bound by the *MBIA* ruling, but it finds the First Department's reasoning instructive with respect to several of the elements.

### 1. Material Misrepresentation of a Fact

Allstate has identified eight categories of statements which it claims were both material and false:

- Representations relating to underwriting standards and the prevalence of exceptions;
- Representations relating to loan to value ("LTV") statistics;
- Representations relating to the percentage of homes which were owner occupied;
- Representations relating to the ratings process and the import of ratings;
- Representations relating to sufficiency of borrower income;
- Representations relating to adverse selection of loans;
- Representations relating to the servicing of loans;
- Representations relating to the documentation process used;

*See* Opp. at 8–38. A statement is material if it would justify a party in taking action on the basis of the statement. 60A N.Y. JUR.2D FRAUD AND DECEIT § 113. The Court quickly dispenses with materiality; statements about any of the above categories would affect the perceived value of RMBS based on the underlying loans. As such, a reasonable investor would be justified in basing a purchase decision on any of the above factors. The Court therefore finds that Allstate has adequately pleaded that the above statements were material. *See also Maine State III*, 2011 WL 4389689, at *17–18.[23] It may well be that the wealth of available statistical information rendered many of the alleged misstatements immaterial. This is especially likely regarding such items as LTV ratios or owner occupancy rates, where Allstate bases its evidence of falsity on information that was publicly available at the time of the Offerings.[24] Nevertheless, falsity and materiality (and particularly the truth-on-the-market defense to materiality)[25] are

---

**23.** Defendants object that, because none of the misrepresentations are specifically tied to the loans that Allstate purchased, Allstate has not made any showing of materiality. Countrywide Defs' Mtn. to Dismiss at 30. The Court has already held that statements regarding Countrywide's underwriting standards may be actionably false because those statements concerned the totality of Countrywide's business. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1186 (C.D.Cal.2008). The Court adopts its earlier logic here; representations relating to Countrywide's underwriting practices are sufficiently pleaded as applying to Countrywide's entire operation and therefore to the specific Offerings purchased by Allstate.

**24.** For instance, the Opposition claims that true LTV ratios were calculated using an industry-standard automated valuation model using the same type of data Countrywide's appraisers would have been using, including contemporaneous home sales data and macroeconomic indicators. Opp. at 20. The inputs to this model would have been widely available at the time. Opp. at 24 ("AVM used information available from the time of the transactions.").

**25.** The "truth on the market" defense can fairly be characterized as a defense to materiality, reliance, or loss causation, or as a separate affirmative defense. However characterized, it requires a fact-intensive inquiry that is better reserved for summary judgment.

mixed questions of law and fact that are more appropriately considered at summary judgment. *See In re Amgen Inc. Sec. Litig.*, 544 F.Supp.2d 1009, 1025 (C.D.Cal.2008) ("As a general rule, the truth-on-the-market defense is intensely fact-specific.").

The question of which Defendants made statements and whether they were actionably false representations of fact or mere opinions is a much closer one.

### Facts or Opinions/Puffery

■ Defendants argue that various statements relating to appraisal values, appraiser independence, LTV ratios, and ratings are non-actionable opinions. Countrywide Defs' Mtn. to Dismiss at 34. Under New York law, "[R]epresentations of opinion or predictions of some thing [sic] which it is hoped or expected will occur in the future will not sustain an action for fraud." *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 210, 411 N.Y.S.2d 66 (4th Dept.1978). The general rule is that real estate "appraisals are akin to statements of opinion which generally are not actionable." *Stuart v. Tomasino*, 148 A.D.2d 370, 372, 539 N.Y.S.2d 327 (1st Dept.1989). Federal securities law provides an exception when the plaintiff alleges that the opinion was subjectively false, i.e. that the defendant did not believe the opinion when it was issued. *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

■ New York does not use the term "subjective falsity," but several rulings make clear that a New York court would apply the analogous principle that misrepresentations regarding (i) a party's subjective belief in an opinion or (ii) the factual bases of an opinion are actionable. *Rodin Properties–Shore Mall, N.V. v. Ullman*, 264 A.D.2d 367, 368, 694 N.Y.S.2d 374 (1st Dept.1999) ("When a professional [ ] has a specific awareness that a third party will rely on his or her advice or opinion, the furnishing of which is for that very purpose, and there is reliance thereon, tort liability will ensue if the professional report or opinion is negligently or fraudulently prepared."); *Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Culture Pearl Corp.*, No. 600634/2010, 31 Misc.3d 1223(A), 2011 WL 1744217, at *6 (N.Y.Sup. May 4, 2011) (Appraisals actionable when purportedly but falsely based on facts such as "dealer and auction values."). The First Department appeared to endorse this view in *MBIA*, holding that Countrywide's representations regarding LTV, appraiser independence, and shadow ratings were actionably false. *MBIA*, 928 N.Y.S.2d at 233–34. These New York cases fit with the Court's understanding of a "fact" as discussed above. Saying that "the home is worth X" is an opinion; saying that "I believe that the home is worth X" is a fact. If Countrywide did not subjectively believe the opinions that it included in the Offering Documents, then it may have misrepresented the fact of its subjective belief.

Allstate has alleged that Countrywide "did not genuinely believe the appraisal values given to the properties" and that Countrywide was pressuring appraisers to inflate their valuations. ¶ 97. And, Allstate has put forth a number of facts to support this allegation. These include, among others, facts which call into question the factual bases for the appraisals and ratings. See Opp. at 21–22 (detailing facts, including, among others, statements from former executives, abandonment of underwriting standards, and incomplete appraisal files). Allstate may be unable to prove subjective falsity, or Countrywide may demonstrate that its disclaimers regarding the source and reliability of appraisals, LTV statistics, and shadow ratings rendered any representations non-false or immaterial. These are mixed questions of law and fact and

therefore best reserved for summary judgment. Allstate has met its pleading burden with respect to falsity and materiality.

### Who Made the Representations?

 A party may be liable under New York state law if it "makes," "authorizes," or "causes" a misrepresentation to be made. 60A N.Y.Jur.2d Fraud and Deceit § 188. The representations that form the basis of Allstate's Complaint all appeared in the Offering Documents. Those Offering Documents were put out by the Depositor Defendants, CWALT, CWABS, CWHEQ, and CWMBS. There is no doubt that the Depositor Defendants "made" the representations and therefore may be held primarily liable; the Court must evaluate whether the same is true of CFC, CHL, and CSC.

The Supreme Court recently limited the scope of primary liability under the federal securities laws in *Janus Capital Group, Inc. v. First Derivative Traders*, ⸺ U.S. ⸺, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011). The *Janus* decision held that only the party "with ultimate authority over the statement, including its content and whether and how to communicate it," makes a statement for purposes of § 10(b). *Id.* at 2302. The Court adopted a very limited interpretation of the verb "to make," holding that "[o]ne 'makes' a statement by stating it … it is the speaker who takes credit—or blame—for what is ultimately said." *Id.* Under that logic, a related company which substantially participates in, or even drafts, a misrepresentation is not a speaker and therefore not liable. *Id.* No court has yet addressed whether *Janus'* logic applies to New York common law fraud claims in addition to § 10(b) claims. The Court finds that it does not.

The *Janus* decision interpreted one word, "make." Making a misrepresentation is an unavoidable requirement for primary liability under § 10(b) and Rule 10b-

5, and so the Court was forced to interpret the term. *Id.;* 17 C.F.R. § 240.10b–5(b). It did so in a way that gave effect to its prior *Central Bank* and *Stoneridge* decisions, while avoiding duplication of the control person liability that Congress had expressly provided for in § 20(a) of the Exchange Act. *Janus*, 131 S.Ct. at 2301–04. None of the same considerations are present with respect to common law fraud. By contrast, New York has embraced a broader scheme of liability for those who make, authorize, or cause a misrepresentation to be made. 60A N.Y. Jur.2d Fraud and Deceit § 188. Allstate has alleged that the Depositor Defendants were limited purpose subsidiaries that were entirely controlled by the other Countrywide entities. The precise relationship, and specifically the degree of control that CFC, CHL, and CSC exerted over the Depositor Defendants, is better addressed on summary judgment. Under New York's more lenient standard, Allstate has adequately alleged that CFC, CHL, and CSC "authorized" or "caused" the representations by virtue of their control over the Depositor Defendants. *Id.* See also *MBIA*, 87 A.D.3d at 294, 928 N.Y.S.2d 229 (fraud claim against CFC adequately pleaded because it alleged that CFC "directed the activities of [CHL] and [CSC]").

### 2. Scienter

Common law fraud requires the plaintiff to plead facts which support an inference of scienter. *Ford v. Sivilli*, 2 A.D.3d 773, 774, 770 N.Y.S.2d 414 (2d Dept.2003). This is a similar requirement as under the federal securities laws, though perhaps slightly more lenient because it does not include the "strong" language of the PSLRA or *Tellabs*. 15 U.S.C. § 78u–4(b)(2). This Court has previously held that very similar facts are enough to meet the more stringent federal requirement. *E.g. In re Countrywide Fin. Corp. Sec.*

*Litig.,* 588 F.Supp.2d 1132, 1185–92 (C.D.Cal.2008). The same facts suffice under New York law. Allstate has met its requirement to plead facts giving rise to an inference that Countrywide knew that the representations in its Offering Documents were false. These facts include statistical analyses purporting to demonstrate that that appraisals and owner-occupancy statistics were overstated (¶¶ 111–28); third party reports purporting to show the same (¶¶ 129–40); internal documents purporting to show that Countrywide was aware that it had sacrificed underwriting standards for market share (¶¶ 141–91); statements by Countrywide insiders and customers purporting to show that it was company policy to circumvent the underwriting guidelines (¶¶ 192–209); and statements by appraisal companies and customers who claim Countrywide acted to inflate appraisal values (¶¶ 210–22).

### 3. Intent to Induce Reliance

The representations that Allstate identifies all appear in the Offering Documents. Offering documents exist for the purpose of registering and selling the securities at issue. Allstate has therefore adequately pleaded that the representations in the Offering Documents were made with the intent to induce reliance.

### 4. Justifiable Reliance

■ A misrepresentation is only actionable if it (i) induces a party to act, and (ii) the party was justified or reasonable in being so-induced. *Secs. Investor Protection Corp. v. BDO Seidman, L.L.P.,* 95 N.Y.2d 702, 709, 723 N.Y.S.2d 750, 746 N.E.2d 1042 (2001) ("Plaintiff cannot sustain a cause of action for fraud if defendant's misrepresentation did not form the basis of reliance."); *Lanzi v. Brooks,* 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946 (1976) (dismissing case because plaintiff should have known that defendant did not have authority to make the disputed representations).

Allstate has met its burden to plead actual reliance by stating that it "received, reviewed, and relied upon the Offering Materials" and that "but for the misrepresentations and omissions in the Offering Materials, Allstate would not have purchased or acquired the Certificates." ¶¶ 281; 283. The truth of this allegation is a question of fact better reserved for summary judgment or trial. Whether Allstate has pleaded justifiable reliance is a closer question. This inquiry dovetails with the materiality inquiry discussed above. In the same way that a misrepresentation may be immaterial or non-false if it is accompanied by accurate, more detailed, information, a party is not justified in relying on a misrepresentation when other, more detailed, information should have alerted a reasonable party of the representation's falsity.

New York follows the general rule that, "one has no right to rely on a mere representation as to value, at least where the parties stand on an equal footing and have equal means of knowledge." 60A N.Y. JUR.2D FRAUD AND DECEIT § 163. However, it has recognized exceptions based on the steps that a plaintiff takes to avoid deception, *DDJ Mgt., LLC v. Rhone Group, L.L.C.,* 15 N.Y.3d 147, 154, 905 N.Y.S.2d 118, 931 N.E.2d 87 (2010), and when the representations are prepared by a professional with knowledge that they will be relied upon. *Rodin Properties–Shore,* 264 A.D.2d at 368, 694 N.Y.S.2d 374.

The pleadings make clear that Allstate, at the time it acquired the Certificates, had access to a wealth of statistics regarding the underlying loan pools. Those statistics may or may not have been truthful. Allstate alternatively may have taken adequate steps to avoid misdirection and therefore have been justified in ignoring

micro-level data in favor of the more macro-level representations in the Offering Documents. Neither question is readily answered by the pleadings, and so the Court reserves them for summary judgment.

### 5. Damages

 Finally, Allstate must plead that it has suffered damages as a result of Defendants' misrepresentations. *Eurycleia Partners*, 12 N.Y.3d at 559, 883 N.Y.S.2d 147, 910 N.E.2d 976. Allstate alleges that it has suffered damages in the form of decreased market value (of all securities) and impaired principal or interest payments (of a subset of five Certificates). ¶¶ 285–86. Defendants argue that Allstate has suffered no damages because (i) most of the Certificates are not impaired and (ii) any losses have been caused by larger macroeconomic events rather than Defendants' misrepresentations. Countrywide Defs' Mtn. at 49–57. This Court addressed identical objections in the *Maine State III* ruling. There it held that damages and loss causation presented complicated questions of fact that were best reserved for summary judgment. *Maine State III*, 2011 WL 4389689, at *19. That result is especially appropriate in this case because New York does not require the plaintiff to precisely tie a corrective disclosure to a diminution in market value. *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir.2007) (New York law does not follow *Dura's* loss-causation requirements). Instead, New York "follows the well-established common law rule that fraud damages represent the difference between the purchase price of the asset and its true value, plus interest, generally measured as of the date of sale." *Id.* Allstate has pleaded that the Defendants misrepresented the value and riskiness of the underlying loans and the collateral securing those loans. ¶¶ 284–88. If true, the RMBS may have been worth less than Allstate paid for them at the time of sale. This is marginally sufficient, at the pleading stage, to establish damages under New York's common law rule.

For the reasons discussed above, the Court **DENIES** Defendants' motions to dismiss the remaining portions of Count III.

### C. AIDING AND ABETTING FRAUD

Allstate alleges that CFC, CCM, Mozilo, Sambol, and the Bank of America Defendants (as Countrywide's successor) are liable to it for aiding and abetting fraud. The Court addresses the Bank of America Defendants' liability below; here it focuses on CFC, CCM, Mozilo, and Sambol.

 Allstate is required to plead that each of these defendants had actual knowledge of the fraud and substantially participated in it. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir.2006). These elements are subject to Rule 9(b). *Id.* at 292–93; *S.E.C. v. Berry*, 580 F.Supp.2d 911, 923–24 (N.D.Cal.2008). This means that substantial assistance must be pleaded with particularity, while actual knowledge may be averred generally. Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). *See also Berry*, 580 F.Supp.2d at 924 ("Rule 9(b) requires only a general allegation of 'knowledge,'" but particularized allegations of substantial assistance.); *Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F.Supp.2d 1113, 1165 (D.Ariz.2010) (Circumstances of common law fraud must be pleaded with particularity, though scienter may be averred generally). Actual knowledge, which may be pleaded generally, is still subject to the requirement that claimants state "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allstate*, 756 F.Supp.2d at

1165 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

With respect to actual knowledge, the Complaint states the following:

> The Aiding and Abetting Defendants knew that the Certificates being packaged and sold by Countrywide were not backed by high-quality loans and were not underwritten according to Countrywide's stated underwriting guidelines. The Countrywide Defendants, Mozilo, and Sambol knew that due diligence on the securitizations was not being done and/or was not being done properly.

¶ 415. With respect to substantial assistance, the Complaint states the following:

> The Aiding and Abetting Defendants gave substantial assistance to and/or facilitated and encouraged the Depositors, Countrywide Securities, and Countrywide Home Loans in their fraud as set forth in Section VII(A) and elsewhere above. In providing substantial assistance, the Aiding and Abetting Defendants knew that the information being distributed to the public was false and misleading, and that material information was being withheld, but intended to facilitate the wrongful conduct.

¶ 416.

 These paragraphs are bare legal assertions. They mirror the legal standard for liability, but they provide no facts, particular or general, which would allow the Court to draw an inference of liability. Other portions of the Complaint come closer with respect to Mozilo and Sambol. *See, e.g.* ¶ 42 (Mozilo and Sambol led the drastic shift in underwriting standards); ¶ 53 (Mozilo and Sambol authorized the establishment of the Structured Loan Desk); ¶¶ 145–149 (Mozilo emails regarding underwriting standards); ¶ 151 (email to Sambol regarding riskiness of Countrywide-originated mortgages); ¶ 153 (email to Sambol regarding overstatement of in-

come); ¶ 161 (memo to Mozilo stating that "borrower repayment capacity was not adequately addressed"); ¶ 169–70 (email exchange between Sambol and Mozilo regarding whether Countrywide should hold less risky loans for its own account and securitize more risky loans). The Complaint's "Control Person" section largely mimics these factual allegations. ¶¶ 308–36. These factual allegations, if true, would establish that Mozilo and Sambol had actual knowledge of, and substantial participation in, the underwriting of risky loans. What they would not do, and what is required under Rule 9(b), is establish knowledge of or participation in the alleged fraud.

Allstate cannot recover in fraud against Countrywide merely because Countrywide underwrote risky loans and issued risky RMBS; Allstate must establish that Countrywide lied about the attendant risks. Allstate has identified a number of alleged misrepresentations in the Offering Documents. Those are the only representations in the case. Allstate has not pleaded any facts that would suggest that Mozilo or Sambol substantially participated in making those misrepresentations or that they had actual knowledge of the misrepresentations.

The allegations against CCM and CFC contain slightly different deficiencies. The only allegations relating to CCM in the Complaint are that it "exercised a high level of day-to-day control over its subsidiary, Countrywide Securities," ¶ 306, and that it was "charged with marketing the loans originated and acquired by [CHL]." ¶ 307. If true, CCM should have been added as a primary violator rather than an aider and abettor. If not true, then an aiding and abetting claim is unsustainable.

The claim against CFC fails because Allstate has alleged that CFC is a primary

violator and it is impossible to aid and abet oneself.

Therefore, the Court **GRANTS** Defendants' motions to dismiss the remaining portions of Count IV. Dismissal is **WITHOUT PREJUDICE.**

### D. NEGLIGENT MISREPRESENTATION CLAIMS

■■■ Allstate claims that the Depositors, CSC, CHL, and CFC are liable to it for negligent misrepresentations in the Offering Documents. ¶ 419. The elements of negligent misrepresentation are "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585 (2007). Allstate's pleadings are sufficient with respect to falsity and reasonable reliance. *See* Sections IV. B.1; IV.B.4. The Court therefore will address the threshold question of whether the Martin Act preempts Allstate's claims, and will then address the privity element.

#### 1. Allstate's Claims Are Not Preempted by the Martin Act

New York authorities are presently split over whether New York's Martin Act (N.Y. Gen. Bus. Law §§ 352 *et seq.*) preempts negligent misrepresentation claims like those in this case. The Martin Act is a New York law which grants the Attorney General broad powers to combat financial fraud. *Id.* "The New York Court of Appeals has held that there is no implied private right of action under the Martin Act, and other New York courts have determined that sustaining a cause of action for breach of fiduciary duty in the context of securities fraud would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney–General's exclusive enforcement powers thereunder." *Castellano v.*

*Young & Rubicam, Inc.,* 257 F.3d 171 (2d Cir.2001); *accord In re Bayou Hedge Fund Litig.,* 534 F.Supp.2d 405, 421 (S.D.N.Y.2007) ("[t]he vast majority of state and federal courts have found that [common law] 'causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act.'"). Many other courts have held the precise opposite, finding that the Martin Act does not preempt a common law claim that does not rely on a Martin Act violation as an element. *See Assured Guar. (UK) v. JP Morgan Inv. Mgmt.,* 80 A.D.3d 293, 304, 915 N.Y.S.2d 7 (1st Dep.2010); *Silver Oak Capital L.L.C. v. UBS AG,* 82 A.D.3d 666, 666, 920 N.Y.S.2d 325 (1st Dept.2011); *see also Anwar v. Fairfield Greenwich, Ltd.,* 728 F.Supp.2d 354, 358–71 (S.D.N.Y.2010). The New York Court of Appeals has not endorsed one view or the other, though it recently agreed to hear the *Assured Guarantee* appeal. Opp. at 112–13.

■■■ "In the absence of controlling forum state law, a federal court ... must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir. 1980). After careful consideration the Court agrees with Allstate that the New York Court of Appeals would likely not find that the Martin Act preempts their negligent misrepresentation claims. The basis of Martin Act preemption was the concern that, seeing that it could not bring a Martin Act claim, a plaintiff would recast her Martin Act claim as one for common law negligent misrepresentation. *See Castellano,* 257 F.3d 171. But that concern is predicated on the notion that the Martin Act intended to wipe out the ability for a private plaintiff to bring a common law negligent misrepresentation claim. If it

did, then of course the Martin Act preempts common law claims. If it did not, then the fact that a private plaintiff can bring a suit that could also be brought by the Attorney General is not a concern.

The Court therefore considers whether the Martin Act intended to override other causes of action. "[I]t is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law." *Hechter v. New York Ins. Co.*, 46 N.Y.2d 34, 412 N.Y.S.2d 812, 385 N.E.2d 551, 554 (1978) (citing *In re Wilson Sullivan Co.*, 289 N.Y. 110, 44 N.E.2d 387, 389–90 (1942) ("If the statute and the common law rule can stand together, the statute should not be so construed as to abolish the common law rule.") (citations omitted)). New York also follows the rule of statutory construction which holds that common law and statutory remedies are not mutually exclusive, but rather cumulative unless "made exclusive by the statute." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 324, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983) (citation omitted).

Several recent decisions from the New York intermediate courts of appeals and the Southern District of New York have performed exhaustive research into the legislative history and uncovered no legislative intent to override the common law. *See Assured Guar. (UK)*, 80 A.D.3d at 304, 915 N.Y.S.2d 7 ("[T]here is nothing in the plain language of the Martin Act, its legislative history or appellate level decisions in this State that supports defendant's argument that the act preempts otherwise validly pleaded common-law

causes of action."); *Caboara v. Babylon Cove Development, LLC*, 54 A.D.3d 79, 83, 862 N.Y.S.2d 535 (2d Dept.2008) ("[N]othing in the clear import of the language of the Martin Act requires a conclusion that the Legislature intended to abrogate any common-law remedy arising from conduct prohibited under the act."); *Anwar*, 728 F.Supp.2d at 358 ("The plain language of the Martin Act, while granting the Attorney General investigatory and enforcement powers and prescribing various penalties, nowhere mentions or otherwise contemplates erasing common law causes of action.").[26]

A 1983 decision of the New York Court of Appeals is instructive. In that case, *Burns Jackson*, New York's highest court considered the Taylor Law, which proscribed strikes by public employees. 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). Just as it later held with respect to the Martin Act, the Court of Appeals found that the Taylor Law did not include a private right of action. *Id.* at 330–31, 464 N.Y.S.2d 712, 451 N.E.2d 459 (No private right of action included in the Taylor Law.); *CPC Intern. Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 285, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987) (No private cause of action under the Martin Act.). Despite the fact that there was no private cause of action, the Court of Appeals held that the Taylor Law did not preempt more traditional common law causes of action whose elements might overlap with the Taylor Law. *Burns Jackson*, 59 N.Y.2d at 331–32, 464 N.Y.S.2d 712, 451 N.E.2d 459. The same logic applies here. The Court can find no sign that the Martin

**26.** Several Southern District of New York Courts have declined to apply the holding in *Anwar*, finding that they are bound by the rules of stare decisis and the Second Circuit's ruling in *Castellano*. *See In re Wachovia Equity Sec. Litig.*, 753 F.Supp.2d 326, 380–81 (S.D.N.Y.2011); *In re Kingate Mgmt. Ltd. Li-* *tig.*, NO. 09 CIV. 5386 DAB, 2011 WL 1362106, *11 (S.D.N.Y. Mar. 30, 2011). There is no Ninth Circuit case on point, however, and this Court is not bound by a decision of the Second Circuit. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir.1994).

Act intended to preempt state law. Lacking clear evidence of legislative intent, the rules of statutory construction that favor overlapping causes of action and disfavor preemption are dispositive. The Court believes that, when it considers the issue, the Court of Appeals will hold that the Martin Act does not preempt a common law negligence action.

For the reasons discussed above, the Court **DENIES** Defendants' motions to dismiss Count V on the basis of Martin Act preemption.

### 2. Allstate Has Not Adequately Pleaded Privity

■■■ "A claim alleging negligent misrepresentation must also be based on some special relationship which implies a close degree of trust between the plaintiff and the defendant." *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529, 724 N.Y.S.2d 66 (2d Dept.2001). An arms-length commercial transaction does not generally implicate such a "special relationship." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263–64, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996). It is not clear from the Complaint whether Allstate purchased its RMBS directly from Countrywide or on the secondary market. Even if Allstate acquired all of the Certificates directly from Countrywide, it has not pleaded any facts that might elevate the purchase above an arms-length business transaction.[27] *See MBIA*, 87 A.D.3d at 295–97, 928 N.Y.S.2d 229. Therefore, the Court **GRANTS** Defendants Motions to Dismiss Count V. Dismissal is **WITHOUT PREJUDICE.**

### E. THE BANK OF AMERICA DEFENDANTS ARE NOT LIABLE AS COUNTRYWIDE'S SUCCESSOR

As discussed above, Delaware law applies to Allstate's successor liability claims against Bank of America. Section II.B, *supra.* This Court previously concluded that identical facts to those pleaded here were insufficient to plead that the Bank of America had engaged in a *de facto* merger under Delaware law. *Maine State II*, 2011 WL 1765509, at *9. Delaware law still applies, and Allstate has not introduced any facts that were not before the Court in April. The Court therefore adopts its previous holding, for substantially the same reasons. *Id.* at *8–9.

Allstate makes two additional allegations in the Complaint. The first is that NB Holdings Corp. is liable as Countrywide's successor. Allstate has not alleged any facts which would support such a claim. Second, Allstate claims that Bank of America has implicitly or explicitly assumed Countrywide's liabilities. It cites as evidence statements to the effect that Bank of America had purchased Countrywide's assets and liabilities, and that it had factored Countrywide's liabilities into the purchase price. Opp. at 127. Allstate has not identified any express contractual assumption of liabilities, and it directs the Court to nothing that would indicate that Bank of America impliedly assumed Countrywide's liabilities. The statements cited in the Complaint appear, rather than supporting Allstate's position, to accurately reflect the structure of the transaction, in which a Bank of America subsidiary purchased CFC. That transaction included all of CFC's assets and liabilities, and it is

---

**27.** Allstate makes reference to the fact that it "could not evaluate the loan files" itself and that it was "heavily reliant on Countrywide's unique and special knowledge regarding the underlying mortgage loans." ¶ 422. This assertion, aside from being contradicted by the highly detailed Prospectus Supplements, fails to establish how this situation is different from the informational asymmetries inherent in any commercial transaction.

perfectly consistent that the sale price would reflect those liabilities.

The Court **GRANTS** the Bank of America Defendants' motion to dismiss all claims against them. Dismissal is **WITHOUT PREJUDICE.**

## V. CONCLUSION

For the reasons discussed above, Counts I, II, VI, VII, and VIII are time-barred. The Court therefore **GRANTS** Defendants' motions to dismiss Counts I, II, VI, VII, and VIII as to **ALL DEFENDANTS.** Dismissal is **WITH PREJUDICE.** Counts III, IV, and V are partially barred by the statute of repose. The Court therefore **GRANTS** Defendants' motions to dismiss Counts III, IV, and V to the extent that they are based on RMBS that the Illinois Plaintiffs purchased prior to December 27, 2005 as to **ALL DEFENDANTS.** Dismissal is **WITH PREJUDICE.** Count III is otherwise adequately pleaded. Count IV is inadequately pleaded. The Court therefore **GRANTS** the motions to dismiss Count IV. Dismissal is **WITHOUT PREJUDICE.** Count V is inadequately pleaded. The Court therefore **GRANTS** the motions to dismiss Count V. Dismissal is **WITHOUT PREJUDICE.** Count IX is inadequately pleaded. The Court therefore **GRANTS** the Bank of America Defendants' motion to dismiss Count IX. Dismissal is **WITHOUT PREJUDICE.** Allstate has leave to submit an amended complaint within 21 days of this order.

**IT IS SO ORDERED.**